**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**NORTHERN DIVISION**

| | |
|---|---|
| **GWENDOLYN P. MCQUIRTER** and **CHARLES E. MCQUIRTER**, | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) |
| **CITY OF MONTGOMERY**, **K.C. BENTLEY**, and **RON COOK**, | ) ) ) |
| Defendants and Third-Party Plaintiffs, | ) ) |
| v. | ) Case No. **2:07-cv-234-MEF-WC** |
| | ) |
| **TIFFANY MICHELE RILEY** and **ROOSEVELT PERKINS**, | ) ) ) |
| Third-Party Defendants. | ) ) |

**THIRD PARTY PLAINTIFFS MOTION FOR DEFAULT JUDGMENT**
**AGAINST THIRD PARTY DEFENDANTS,**
**TIFFANY MICHELE RILEY AND ROOSEVELT PERKINS**

Pursuant to Rule 55 of the *Federal Rules of Civil Procedure*, Third Party Plaintiffs, City of Montgomery ("the City"), Cpl K. C. Bentley ("Bentley") and Lt. Ron Cook ("Cook"), by and through the undersigned attorney, move the Court for default judgment against Third Party Defendants, Tiffany Riley and Roosevelt Perkins for failure to plead or otherwise defend this action.

1.      On this date, Third Party Plaintiffs have filed an Application for Entry of Default with supporting affidavits with the Clerk of Court.

2.      Third Party Plaintiffs adopt and incorporate the factual and procedural background more fully set out in Defendants' Response to Plaintiff Gwendolyn

McQuirter's Motion for Partial Summary Judgment and Memorandum of Law in support Defendants Motion for Summary Judgment.  However, Third Party Plaintiffs briefly state unto the Court:

### a.    *Factual Background*

The lawsuit arises from an incident that occurred on Friday, September 15, 2006, wherein the Special Operations Division of the Montgomery Police Department conducted a prostitution sting in the area of Mobile Highway and the West South Boulevard. *(DX 1, Bentley Depo.p. 31, lines 18-19; p. 34, lines 12-14).*

Bentley was on the detail and assigned to the processing team.  *(DX 1, Bentley Depo. p. 31, lines 18-19).*  One of the women arrested, Tiffany Riley, lied about her identification and gave Cpl. K. C. Bentley the false name and date of birth of Plaintiff Gwendolyn McQuirter.  *(DX 1, Bentley Depo. p. 60, lines 6 - 11 and DX 7, ¶ 1, Plaintiff Gwendolyn McQuirter's Response to Defendants' First Set of Interrogatories and Request for Production of Documents).*

After Bentley finished processing at Fairwest, she returned to her division on Highland Avenue to complete paperwork for the daily activity report that had to be provided to her captain and major.  *(DX 1, Bentley Depo. p. 42, lines 5 - 22).*  Part of the paperwork required for Bentley to provide was a mug shot of the person arrested with the name, date of arrest, location of arrest, the specific charge and person's criminal history from NCIC.  *(DX 1, Bentley Depo. p. 42, line 23 to p. 43, line 14).*  This information is required to be provided to the major and captain for any arrest every day.  *(DX 1, Bentley Depo. p. 49, line 21 to p.50, line 19)*

Typically, the mug shot of people arrested comes from the booking photograph

made when the person was booked into jail. *(DX 1, Bentley Depo.  p. 43, line 23 to p. 45, line 21).*  Bentley could not obtain a mug shot from the booking photos from that night to complete her paperwork on the arrests because the camera system was not working. *(DX 1, Bentley Depo.  p. 44, line 1 -21;  p. 98, line 22 to p. 99, line 9 and Doc. 14, ¶ 9 ).*   All of the women that were arrested that day had been arrested before except for Tiffany Riley (identified herself as McQuirter). *(DX 1, Bentley Depo.  p. 52, lines 11 - 16).* Bentley used booking photos on the others from previous arrests for her paperwork that night. *(DX 1, Bentley Depo.  p. 99, lines 2 – 15;  p. 105, lines 19-22 and Doc. 14, ¶ 9).*

However, Bentley had to use the Law Enforcement Tactical System ("LETS") at MPD to get the photo of Gwendolyn McQuirter. *(DX 1, Bentley Depo.  p. 88, lines 19 – 23;  p.  98, line 22 to p. 99, line 15; p. 103, lines 5 – 11; p. 105, lines 16- 22).*  LETS is a network system provided by Alabama Criminal Justice Information Center (ACJIC) to the Montgomery Police Department and has data from the records of several different agencies. *(DX 5, Drinkard Affidavit).*    LETS is used by Bentley and Cook as a law enforcement investigative tool or any other law enforcement purposes. *(DX 1, Bentley Depo.  p. 88, lines 7 – 23; p. 103, lines 5 – 11; p. 105, line 16  to p. 108,line 15; p.  109, line 23 to p. 110, line 17; p. 112, line 14 to p. 113, line 7; p. 115 to p. 116, line 11 and DX 2, Cook Depo. pp. 61 - 65).*

Cook, the Public Information Officer ("PIO") on duty for the weekend, was subsequently contacted by Bentley's supervisor and advised that the arrest photos from the sting were available to be disseminated. *(DX 2, Cook Depo. p. 40, line 21 to p. 41, line 2; p. 42 lines 8 - 20).*    The photos and press release were sent to the media on September 16, 2006. *(DX 2, Cook Depo. p. 57, lines 8-11).*

On September 19, 2006, Plaintiff Charles McQuirter contacted Lt. Ron Cook with the Montgomery Police Department in reference to his wife's photo being released. *(DX 2, Cook Depo. p. 55, lines 19 to p. 56, line 13 and DX 3, Thornton Affidavit).* On September 20, 2006, a retraction was sent by the Montgomery Police Department to the media. *(DX 3, Thornton Affidavit).*

Bentley was informed when she returned to work on the following Tuesday that Mr. McQuirter had called MPD and it was not Gwendolyn McQuirter that was arrested and that the true identity of the person arrested needed to be determined. *(DX 1, Bentley Depo. p. 71, line 15 to p. 71, line 21).* Someone contacted the city jail and found out a guy named Roosevelt Perkins bonded out the person booked under the name of Gwendolyn McQuirter. *(DX 1, Bentley Depo. p. 72, lines 3 – 10).* Bentley and others on duty went to try to locate Perkins at his residence and place of work. *(DX 1, Bentley Depo. p. 72, lines 11 – 16; lines 20 - 22).*

Perkins provided the information on the identification and address of Tiffany Riley. *(DX 1, Bentley Depo. p. 74, lines 3 – 12).* Riley was arrested and Bentley took a statement from her. *(DX 1, Bentley Depo. p. 75, lines 8 – 17).* Riley indicated to Bentley that she lied because she knew that she had two capias warrants against her. *(DX 1, Bentley Depo. p. 75, line 19 to p. 76, line 8).*

On September 20, 2006, Riley pled guilty to prostitution. *(DX 6, Murphy Affidavit).* Riley was charged and pled guilty on September 20, 2006 to giving a false name to a law enforcement officer. *(DX 6, Murphy Affidavit).*

Riley has also talked to Gwendolyn McQuirter since September 2006 and apologized to her for using her name when she was arrested for prostitution. *( DX 7, ¶ 1,*

*Plaintiff Gwendolyn McQuirter's Response to Defendants' First Set of Interrogatories and Request for Production of Documents).*

### b.    Procedural Background

This case was removed from the Circuit Court of Montgomery County, Alabama to the United States District Court, Middle District, Northern Division on March 15, 2007. *(Doc. 1).* Plaintiffs, Gwendolyn McQuirter and Charles McQuirter filed a Complaint against the City of Montgomery, multiple media Defendants and Fictitious Parties A-Z on February 8, 2007. *(Doc 1, Attachment 1, State Court Pleadings).*

Before Defendant City of Montgomery answered the Complaint, Plaintiff filed an Amended Complaint which no longer named the numerous media Defendants and contained the following seven counts: Count I - Intentional Infliction of Emotional Distress; Count II - Libel Per Se; Count III - Slander Per Se; Count IV - Invasion of Privacy; Count V - Loss of Consortium; Count VI - Violation of the Driver Privacy Protection Act, 18 U.S.C. §§ 2721-2725 and Count VII - 42 U.S.C. § 1983. Defendants removed the case to the United States District Court on March 15, 2007.

On July 10, 2007, Plaintiffs filed a Motion for Leave to File a Second Amended Complaint which added as Defendants, K.C. Bentley ("Bentley") and Ron Cook ("Cook"). *(Docs. 11 & 12).* Defendants filed an Answer to the Second Amended Complaint on July 16, 2007. *(Doc. 14).*

On July 16, 2007, Defendants filed a Motion for Leave to File a Third Party Complaint *(Doc. 15)* which was granted on July 31, 2007. *(Doc. 24).* The Third Party Complaint was filed on July 31, 2007, naming as third party defendants, Tiffany Riley ("Riley") and Roosevelt Perkins ("Perkins"). *(Doc. 25).* The Third Party Complaint

alleges one count of fraud by Tiffany Riley and one count of fraud by Roosevelt Perkins.

The return receipt card showing service on the Summons and Third Party Complaint was signed by Tiffany Riley for Tiffany Riley and returned on August 4, 2007 with the Answer due for Tiffany Riley on August 24, 2007. *(Doc. 27)*.

The Summons and Third Party Complaint for Roosevelt Perkins was "Returned to sender, Unclaimed" on August 22, 2007. *(Doc. 28)*. An alias Summons was issued for Roosevelt Perkins on September 5, 2007 *(Doc. 29)*. The return receipt card showing service of the alias was received without a signature on September 7, 2007 and that the Answer was due on September 26, 2007. *(Doc. 30)*.

On September 7, 2007, Roosevelt Perkins called the City of Montgomery Legal Department and spoke to Allison Highley, Associate City Attorney about the Complaint he had received. *(DX 8, Highley Affidavit)*. Ms. Highley asked Mr. Perkins if he had hired a lawyer and explained that she could only speak to his attorney if he was represented by counsel. *(DX 8, Highley Affidavit)*. Mr. Perkins indicated that he had not spoken to a lawyer about the case. *(DX 8, Highley Affidavit)*.

Mr. Perkins stated that he had received the Third Party Complaint and that he wanted to resolve the matter short of litigation. *(DX 8, Highley Affidavit)*. Mr. Perkins said he would do "whatever it takes to make this thing go away." *(DX 8, Highley Affidavit)*. Mr. Perkins stated that he was wrong to bond Tiffany Riley out under a false name, but that he just was not thinking. *(DX 8, Highley Affidavit)*.

Ms. Highley told Mr. Perkins that there probably was not a lot the City could do at this time to help him out. *(DX 8, Highley Affidavit)*. Mr. Perkins was told that he would have to comply with the Summons and that he should consult with an attorney or

ask the clerk for help filing his Answer to the Complaint. *(DX 8, Highley Affidavit).*

Mr. Perkins left a telephone number where he could be reached. *(DX 8, Highley Affidavit).* However, Ms. Highley called and left a message at that number early the next week, but the call was not returned. *(DX 8, Highley Affidavit).*

3.    Third Party Defendants have failed to answer, plead or otherwise defend this action. Third Party Plaintiffs have complied with the *Federal Rules of Civil Procedure* and are entitled to default judgment pursuant to *Fed.R.Civ.P.*, Rule 55,

4.    The claims of Third Party Plaintiffs are not for a sum certain. Wherefore, Third Party Plaintiffs request a request judgment against Third-Party Defendants Tiffany Michele Riley and Roosevelt Perkins for sums that may be adjudged against Third Party Plaintiffs in favor of Plaintiffs Gwendolyn and Charles McQuirter.

Respectfully submitted this 1st day of November, 2007.

/s/ Kimberly O. Fehl
Kimberly O. Fehl (FEH001)

OF COUNSEL:
City of Montgomery
City Attorney's Office
P. O. Box 1111
Montgomery, AL 36101-1111
Telephone:  (334) 241-2050
Facsimile:  (334) 241-2310

## CERTIFICATE OF SERVICE

I hereby certify that on this 1st day of November, 2007, I electronically filed the foregoing with the Court of the Clerk using the CM/ECF system to be upon the following:

> Jerry M. Blevins, Esq.
> Law Office of Jerry M. Blevins
> Hillwood Office Center
> 2800 Zelda Road, Suite 200-3
> Montgomery, Alabama 36106

I hereby certify that foregoing has been served upon the following by U. S. Mail, postage prepaid on this 1st day of November, 2007:

> Tiffany Michele Riley
> 846 Corbett Street
> Montgomery, Alabama 36108
>
> Roosevelt Perkins
> 3430 Gaston Avenue
> Montgomery, Alabama 36105

> /s/ Kimberly O. Fehl
> Of Counsel

COPY

1

1       IN THE UNITED STATES DISTRICT COURT

2       FOR THE MIDDLE DISTRICT OF ALABAMA

3             NORTHERN DIVISION

4

5    GWENDOLYN P. MCQUIRTER,
     et al.,

6

7        Plaintiffs,
                         CASE NUMBER
    vs.                  2:07-cv-00234-MEF-WC

8

9    CITY OF MONTGOMERY, et cet.,
    et al.,

10       Defendants.

11

12

13

14         * * * * * * * * * * *

15       DEPOSITION OF KRISTEN CAROLINE BENTLEY,

16  taken pursuant to stipulation and agreement

17  before Heather Barnett, Court Reporter and

18  Commissioner for the State of Alabama at Large,

19  in the Offices of Dunn, King & Associates, 2800

20  Zelda Road, Suite 100-2, Montgomery, Alabama, on

21  Friday, June 29, 2007, commencing at

22  approximately 10:40 a.m.

23          * * * * * * * * * * *

DEFENDANT'S
EXHIBIT

4

KRISTEN CAROLINE BENTLEY

1

2      The witness, having first been sworn to

3  speak the truth, the whole truth and nothing but

4  the truth, testified as follows:

5                    EXAMINATION

6  BY MR. BLEVINS:

7  Q.   Would you state your full name for me,

8       please?

9  A.   Corporal Kristen Bentley.

10  Q.   What's your middle name?

11  A.   Caroline.

12  Q.   Kristen Caroline Bentley?

13  A.   Kristen Caroline Bentley, yes, sir.

14  Q.   And what is your home address?

15  A.   516 Sandfield Court, Montgomery Alabama.

16  Q.   How long have you lived at that address?

17  A.   Since October of 2002.

18  Q.   Okay.  And what is your date of birth?

19  A.   11-14-73.

20  Q.   And that makes you how old?

21  A.   33.

22  Q.   Are you married?

23  A.   No, sir.

```
 1              would have been after Major Murphy, but

 2              currently those two would be in the middle.

 3        Q.    Okay.  All right.  Now, I take it you realize

 4              that we're here today to take your deposition

 5              in a lawsuit filed by Gwendolyn Charles

 6              McQuirter.  You're aware of that, correct?

 7        A.    Yes, sir.

 8        Q.    You're aware that the McQuirters have sued

 9              the City of Montgomery over an incident that

10              you were involved in, correct?

11        A.    Yes, sir.

12        Q.    I'm going to refer to the McQuirter lawsuit

13              and the events that led to the lawsuit as the

14              McQuirter matter, okay?

15        A.    Yes, sir.

16        Q.    Can you tell me how you got involved with the

17              McQuirter matter?

18        A.    We had scheduled a prostitution detail for

19              September the 15th, and I was assigned to the

20              processing team.  When we schedule a

21              prostitution detail, we'll have the male

22              undercover officers go out and pick up the

23              prostitutes.  When they pick them up, they'll
```

1     Best you can recall, Sergeant Wright told you

2     about this detail, correct?

3  A.  Yes, sir.

4  Q.  Where did he tell you it was going to take

5     place?

6  A.  She.

7  Q.  I'm sorry.  Where did she tell you it was

8     going to take place?

9  A.  That we would have the processing team at

10    Community Policing, but the guys that -- the

11    narcotics officers that are undercover will

12    go pick up the girls on the Western Boulevard

13    or Mobile Highway or somewhere in that

14    general vicinity.

15  Q.  And you said the process team was going to be

16    located where?

17  A.  The processing team was at Community Policing

18    office is Fairwest.

19  Q.  Is Fairwest a street?

20  A.  Yes, sir.

21  Q.  Where is that located in the city?

22  A.  Off Mobile Highway.

23  Q.  About how far from the area where the detail

42

| | | |
|---|---|---|
| 1 | A. | Went back to the office. |
| 2 | Q. | Did you have any further involvement with the |
| 3 | | prostitution arrest that had occurred or was |
| 4 | | that the end of your involvement? |
| 5 | A. | When we finished the processing over at |
| 6 | | Fairwest and the girls were transported and |
| 7 | | they ended up at the city jail -- like I |
| 8 | | said, I don't know if they went to our office |
| 9 | | first or not.  Once they ended up at the city |
| 10 | | jail, we had gone back to the office on |
| 11 | | Highland Avenue and were completing the |
| 12 | | paperwork that's required for us to do that's |
| 13 | | turned in to the captain and the major. |
| 14 | Q. | And what paperwork is that? |
| 15 | A. | Everybody -- there is what they call the |
| 16 | | daily activity report.  When you do the daily |
| 17 | | activity report, it indicates what was done |
| 18 | | for the day, which would indicate that we |
| 19 | | conducted a prostitution detail and, you |
| 20 | | know, how ever many arrests were made and who |
| 21 | | they were and any other activity that |
| 22 | | occurred for the day. |
| 23 | Q. | Any other paperwork? |

43

1    A.   Yes, sir. There's also -- I guess they refer

2         to it by the major's last name. So it's

3         whoever the current major is -- they call it

4         a King's mug, a Davis mug, whatever the case

5         may be. With it being Major Davis, it's a

6         Davis mug now. And it's that person's mug

7         shot, the photo that was taken of them.

8         Underneath that it will indicate -- it has

9         the person's name; it will also have the date

10       of arrest, the location of arrest, what they

11       were arrested for as far as the specific

12       charges, and then their criminal history,

13       whatever comes from an actual criminal

14       history that's printed through NCIC.

15    Q.   Let me make sure I understood. I think you

16        lost me there. The camera wasn't working at

17        Highland Avenue, right?

18    A.   Correct.

19    Q.   But y'all completed a form concerning mug

20        shots?

21    A.   When they were taken over to -- the girls

22        that were arrested, when they were taken over

23        to the city to the jail, typically they would

1      have a booking photo.  We intended on using

2      the booking photo because our camera system

3      wasn't working.  Therefore, when they were

4      taken over to the city, we were waiting for

5      the jail to get them processed and get their

6      booking photos and intended on using the

7      photos that were taken by the jail.  However,

8      like I said, it wasn't our camera that was

9      the problem; there was the possibility that

10     it's the camera system in general.  If the

11     system isn't working, then nobody can use it.

12     Sometimes it might be a failure on our end;

13     sometimes it might be a failure of the whole

14     system.  So I continuously attempted to log

15     into the system and pull up pictures of these

16     girls and could not find any pictures that

17     were taken that day of the these girls.

18     Therefore, it would be my assumption that the

19     camera system as a whole was not working at

20     the time.  So the jail was not able to take

21     their booking photographs at the time.

22  Q.  All right.

23  A.  This was some hours after they had been

45

```
 1              transported.  And I don't remember the exact

 2              time frame, but it had been a while.  It

 3              would have been enough time that at least one

 4              of the girls should have been in the -- had a

 5              booking photograph taken by that point if the

 6              system would have been working properly.

 7      Q.      So let me just make sure I understand.  You

 8              left the area of Mobile Highway?

 9      A.      Right.

10      Q.      And went to the Highland Avenue office over

11              there?

12      A.      Right.

13      Q.      Okay.  The females who were arrested,

14              meanwhile, went to the city jail?

15      A.      Correct.

16      Q.      You were at Highland Avenue waiting on

17              photographs to be taken, booking photographs

18              to be taken at the city jail?

19      A.      Yes, sir.

20      Q.      All right.  And you were waiting for those

21              photographs at Highland Avenue; is that

22              right?

23      A.      I was waiting for the jail to take them, and
```

1  there.

2      So when I'm going through this, I'm

3  going through the list of the names of girls

4  that we've arrested that day and putting

5  those names in there and trying to determine

6  if there's a photograph of any one of those

7  girls that's been taken on that date.  I'm

8  also having to get the information on each of

9  these girls so that a criminal history could

10  be run through NCIC so that I could put that

11  information on this paper for the major and

12  the captain when I get done.

13  Q.  Why were you needing the photographs?

14  A.  Because I'm required to turn in a photograph

15      -- or any of us, when there's an arrest made

16  for the day, you turn in the photograph of

17  that person and, like I said, the

18  information, the date of arrest, location of

19  arrest, the charges and their criminal

20  history.

21  Q.  All right.  Okay.  You turn that in to who?

22  A.  There's copies of those items that go on the

23  major's desk and copies of those items that

50

```
 1            go on the captain's desk.

 2     Q.    Major who?

 3     A.    Major Davis and Captain Hughes.

 4     Q.    So it's just standard practice that this

 5            information would go to Major Davis and

 6            Captain Hughes.  I mean, that's in every

 7            case?

 8     A.    Any arrest every day.  Every day.  Like if

 9            you arrest somebody for unlawful distribution

10            of controlled substance, that person's

11            photograph with the information that I

12            indicated is on one piece of paper.  And,

13            then, you know, if you've arrested somebody

14            for a possession charge where they've been in

15            possession of drugs, then a picture of the

16            drugs would go with that.  If it's a

17            distribution, obviously you're not going to

18            have a picture of the drugs because they were

19            sold.

20     Q.    Now, back at the scene of the prostitution

21            detail, whose job was it to get the

22            individuals' identities that were arrested?

23     A.    There's nobody specified that's going to -- I
```

52

1        driver's a license?

2  A.  Would you check to see if the person had a

3        driver's license.

4  Q.  Yes.

5  A.  Not necessarily.

6  Q.  What do you mean not necessarily?  I mean

7        might you do it or might you -- it's up to

8        the people on the processing team to decide

9        if you do it or not?

10       MS. HIGHLEY:  Object to the form.

11  A.  When you have -- like I said, most of the --

12        well, actually, all of the girls that were

13        arrest that day except for Tiffany Riley had

14        been arrested before, most of them for

15        prostitution, but all of them had been

16        arrested before.

17        So, therefore, when you have a girl

18        that's sitting there telling you her name,

19        and you look up her name and find that

20        there's her name and here's photograph of her

21        where she's been arrested before, then you're

22        looking at a picture and you are getting the

23        name from her; or even if it were a girl that

1    location where you were on the processing

2    team, tell me what you recall about your

3    interaction with her.

4  A.  I remember Ms. Riley sitting beside me.  Like

5    I said, I was sitting in front of the

6    computer; and I asked her her name, and she

7    told me Gwendolyn McQuirter.  Obviously, I

8    didn't know how to spell that last name, how

9    it was intended for her spell it.  And I'm

10   certain that I asked her how to spell it.

11   And she told me -- asked her her birth date;

12   she gave me Mrs. McQuirter's birth date.  I'm

13   certain that I asked her -- certain that I

14   asked her her Social Security number, and I

15   don't recall exactly what she told me.  As

16   best I can remember, I think that she told me

17   that she didn't know her -- couldn't remember

18   her Social Security number.  I know she

19   didn't give me one.  Had she given me one, I

20   would have known that that wasn't the correct

21   identity because the Social Security number

22   of Mrs. McQuirter is in the computer system.

23   So when she told me her name was Gwendolyn

1          her picture was on there, but she wasn't

2          arrested for prostitution.

3   Q.  Who was telling you this, now?

4   A.  I said I don't remember.

5   Q.  I mean, was it somebody employed with MPD --

6   A.  Right.

7   Q.  -- or was it somebody on the street?

8   A.  Somebody in my office.

9   Q.  Do you recall it being one of your

10        supervisors?

11   A.  No, sir, I don't remember who it was.

12   Q.  Just somebody passing you in the hallway

13        mentioned it to you?

14   A.  I don't remember who it was.  It was somebody

15        in my office, but I don't remember exactly

16        what they were -- there was a discussion in

17        the office about the fact that that was not

18        Mrs. McQuirter that was arrested; that this

19        person who was arrested had used

20        Mrs. McQuirter's name and that we needed to

21        determine her true identity.

22   Q.  And you don't remember who told you you

23        needed to determine her true identity?

72

A.   No, sir.

Q.   What was your involvement after that?

A.   I'm going to say we, referring to the
     narcotics officers that were on duty at the
     time, because I don't remember who exactly
     did what.  Apparently, somebody contacted the
     jail, and we found out that this guy by the
     name of Roosevelt Perkins was the one that
     bonded Ms. Riley out under the name of
     Gwendolyn McQuirter.

          So we obtained information from
     Mr. Perkins and went to his -- if I'm not
     mistaken, the chain of events was the fact
     that we went to his residence first.  His
     wife was at the residence.  His wife stated
     that he was not there, that he was at work.
     He should be coming home shortly.  I believe
     that they said that he worked at Carquest and
     gave us the location of the Carquest that he
     worked at.  Some narcotics officers went to
     that location to try to locate him.  He had
     already left and was not at work at the time.

Q.   Why were y'all trying to locate him?

74

1        from work because he's not at Carquest -- he

2        left there and showed up at his house.  When

3        he showed up at has house, the narcotics

4        officers spoke with him and asked him about

5        the fact that he had made bond for Ms. Riley,

6        who we still didn't know was Ms. Riley at the

7        time; therefore, they asked him who she was,

8        and he provided that information.

9   Q.   And what happened next?

10  A.   We obtained an address for Ms. Riley from

11       Mr. Perkins and attempted to look at her --

12       the address.  I want to say it was on Bragg

13       Street, if I'm not mistaken.  We tried to get

14       her with -- we were obviously going to arrest

15       her for giving the false name, but she didn't

16       answer the door.  Nobody answered the door at

17       this residence where he told us that she

18       lived.  We asked him anywhere else that she

19       might be, and we were not able to determine

20       anywhere else that she might be.

21          Then we had him to -- I don't remember

22       if he called her or if he went to her

23       residence without calling her first, but we

1    had Mr. Perkins to go over there and get

2    Ms. Riley in the truck with him under the

3    pretenses that they were going somewhere, and

4    had explained to Mr. Perkins that as soon as

5    he pulled away from the house with her in the

6    vehicle, that we were going to stop him and

7    arrest her.

8    Q.   Is that what y'all did?

9    A.   Yes, sir.

10   Q.   Was Ms. Riley arrested?

11   A.   Yes, sir.

12   Q.   Did you have any further involvement with the

13        McQuirter matter after that?

14   A.   I took a statement from -- Ms. Riley was

15        arrested at that point and taken to our

16        office.  When she was taken to our office, I

17        took a statement from Ms. Riley.  During her

18        statement to me, she indicated that she lied

19        about her name because she had two Capias

20        warrants.  She knew that she had two Capias

21        warrants because she had taken Mrs. McQuirter

22        to the hospital on a previous occasion.  When

23        she was en route to the hospital, she was

1    stopped by the police officers -- or a police

2    officer.  When she was stopped, the police

3    officer advised her that she had two Capias

4    warrants and advised her to take care of the

5    matter.  She indicated to me that she did not

6    take care of the matter, so therefore, she

7    knew she had two capias warrants.  And that's

8    why she lied about her name.

9         She also indicated that Mrs. McQuirter

10   was just like a sister to her and she had

11   known her for approximately four years and

12   lived with her on and off, and that's how she

13   was able to give her Mrs. McQuirter's

14   information.

15   Q.  Okay.  Did y'all discuss anything else?

16   A.  She indicated that she contacted Mr. Perkins

17       to bond her out of jail and that she told

18       Mr. Perkins -- obviously, she had to have

19       told him that she was in there under

20       Mrs. McQuirter's name, and he bonded her

21       out.  As far as I know, that's about the

22       extent of the interview with Ms. Riley, the

23       statement that she gave me.

88

1                there's a photograph in there.  See, there's

2                not some magical fail-proof way to say that

3                somebody couldn't use somebody else's name.

4    Q.   Well isn't there a fail-proof way?  I take it

5           you're familiar with LETS, aren't you?

6    A.   Yes, sir.

7    Q.   What is LETS?

8    A.   It is what is the Law Enforcement Tactical

9           System, I believe the name of it is.

10   Q.   And through LETS, you can access people's

11          driver's license photograph, can't you?

12   A.   Yes, sir.

13   Q.   You can access other information on a

14          person's driver's license, can't you?

15   A.   Yes, sir.

16   Q.   That information is provided to MPD through

17          the Department of Public Safety, isn't it?

18   A.   I would assume so.

19   Q.   So when we talk about the McQuirter matter,

20          you had the means to go through LETS and pull

21          up Gwendolyn McQuirter's photograph off her

22          driver's license, didn't you?

23   A.   Correct.

98

A.    Typically, there would be some indication
      they might not know the birth date
      correctly.  They might be off by a year or
      something of that sort.  You know, it would
      not be so common that I'm going to be able to
      give you a name, birth date and address that
      is somebody else's and spit it out to you
      like it's my own.  I can't think of anybody
      off the top of my head right now that I could
      give that information on; like that I could
      tell you that I'm so and so, give you the
      name, give you the address is give you their
      birth date.

Q.    And I don't think you answered my question,
      so let me ask it again.  Did the thought ever
      enter your mind after you received Gwendolyn
      McQuirter's picture through the LETS system,
      that these people may not be the same people?

A.    No, sir.

Q.    Did that thought ever enter your mind?

A.    No, sir.

Q.    Okay.  All right.  And what was the reason
      you went to the LETS system to retrieve

1      Ms. McQuirter's photograph?

2  A.   Like I said, I believe the computer -- the

3      camera system wasn't operating correctly and

4      we did not have the photos taken from our

5      office because it wasn't working and,

6      therefore, I intended to use the booking

7      photos to turn in to the captain and the

8      major.  The booking photos were not in there

9      either.  So once I could not get booking

10     photos that were taken that date -- the ones

11     that were used to all of the girls except for

12     Mrs. McQuirter's photograph, which actually

13     would have been Ms. Riley -- should have been

14     Ms. Rileys, the ones that were used were from

15     previous arrests.

16  Q.   Did you call downtown and ask them when are

17     the booking photographers going to be put on

18     the computer?

19  A.   I want to say that there was male officers

20     that had taken the girls over there and that

21     they had -- I might have contacted them via

22     the SouthernLINC, and they indicated to me

23     that they weren't able to put the photos in

103

1       photograph from the LETS system?

2   A.  No, sir.

3   Q.  All right.  Let me try --

4   A.  I'm saying that --

5   Q.  Hang on just a minute, because I'm trying to

6       ask real simple questions.  After you spoke

7       with the narcotics officer that we just

8       talked about -- after that, did you get

9       Mrs. McQuirter's photograph off the LETS

10      system?

11  A.  Yes, sir.

12  Q.  Okay.  How long after?

13  A.  I'm not certain the exact time frame.

14  Q.  Would it have been hours later, minutes

15      later, days later?

16  A.  It was not hours or days.  It probably would

17      have been within -- after speaking to them,

18      maybe within an hour.

19  Q.  Okay.  And what was the urgency in obtaining

20      Mrs. McQuirter's photograph?

21  A.  We were completing all the paperwork that we

22      had to do for the evening in order to turn in

23      to the captain and the major.  And we had to

105

1    A.    Only if the camera system was down.

2    Q.    Okay.  And as far as you know, that was okay

3          with your supervisors for you to do that?

4    A.    Yes, sir.

5    Q.    To your knowledge, were they aware that you

6          did that?

7    A.    I'm not certain.  I know that Lieutenant

8          Crockett was there.  Lieutenant Crockett was

9          aware that we did not have the photos taken

10         from that day because the system was not

11         working.  Whether or not he explained that to

12         the captain and the major, I'm uncertain.

13   Q.    You're talking about Ms. McQuirter when you

14         said Lieutenant Crockett was aware of it or

15         are you talking about the other times?

16   A.    No, sir.  What you were asking me was about

17         using the previous photographs.

18         Mrs. McQuirter's was a LETS photograph

19         because that -- all of the other girls had

20         been arrested previously, so all of their

21         photographs were photographs that were taken

22         previously.  Lieutenant Crockett was aware of

23         that.  Lieutenant Crockett also would have

1        been aware of the fact that Mrs. McQuirter's

2        photograph from LETS was used because she

3        didn't have a photograph in the system.

4   Q.  Why would Lieutenant Crockett have been aware

5        of it or how was he aware of it?

6   A.  I believe he was standing over by my desk,

7        and I explained to him that I did not have a

8        photograph of what I thought was

9        Ms. McQuirter at the time and that I was

10       going to have to use a LETS photograph.

11  Q.  So you just said I believe he was standing at

12      my desk, and then you went through a

13      conversation y'all had.  Did y'all have the

14      conversation or not?

15           MS. HIGHLEY:  Object to the form.

16  Q.  Did y'all have that conversation?

17  A.  Yes, sir.

18  Q.  Did you remember him standing by your desk

19      when you had that conversation?

20  A.  Yes, sir.

21  Q.  All right.  And you remember him standing

22      there near your desk as you accessed the LETS

23      system and retrieved Mrs. McQuirter's

1        photograph; is that right?

2  A.  I'm not certain that he was still standing

3        there at the point where I retrieved it.  He

4        was standing there when I expressed to him

5        that I did not have a photograph of

6        Mrs. McQuirter and that I was going to have

7        to try to see if there was one on LETS.

8  Q.  Did he tell you it was okay to go ahead or

9        what was his response?

10  A.  He just says okay.

11  Q.  And you took that to mean it was okay for you

12        to do that?

13  A.  Certainly.

14  Q.  Okay.  Now, are there only certain people

15        that can access the LETS system or can

16        anybody use it?

17  A.  You would have to be law enforcement and you

18        would have to be registered with LETS.

19  Q.  Were you registered when you accessed it?

20  A.  Yes, sir.

21  Q.  And you had accessed it before you did it in

22        Mrs. McQuirter's case?

23  A.  Yes, sir.

108

Q.   Okay.  And for what law enforcement purpose
     were you accessing the LETS system?

A.   In order to complete my duties for the day
     and take the photograph and put it on the
     paper to turn in to the captain and the
     major.

Q.   Okay.  And in your opinion, that was a
     legitimate law enforcement purpose to access
     Mrs. McQuirter's driver's license photo?

A.   Yes, sir.  I'm required to do that and turn
     it in at the end of day; or anybody that has
     an arrest is required to do that, not
     necessarily from LETS but to turn in the
     photograph whether it be from LETS or from
     the AS-400 system.

Q.   Okay.  And you also wanted to forward that
     out to be distributed to the media, didn't
     you, or was that --

A.   No, sir, that's not anything that involves
     me.

Q.   Okay.  You're aware the photographs were
     released to the media, aren't you?

A.   When I saw it on TV, yes, sir.

109

```
1    Q.   Do you remember seeing Mrs. McQuirter's
2         picture on TV?
3    A.   Yes, sir.  They had photographs of all the
4         prostitutes that were arrested that day that
5         they showed.
6    Q.   But Mrs. McQuirter wasn't one of the
7         prostitutes arrested, was she?
8    A.   No, sir.
9    Q.   Somebody messed up, didn't they?
10             MS. HIGHLEY:  Object to the form of the
11                 question.
12   Q.   Did somebody mess up or was she a prostitute
13        that was arrested?
14   A.   No.  Ms. Riley provided her information;
15        therefore, that's what brought Mrs. McQuirter
16        into the situation.
17   Q.   So Ms. Riley messed up?
18   A.   Yes, sir.
19   Q.   Did you mess up?
20   A.   No, sir.
21   Q.   You didn't do anything wrong?
22   A.   No, sir.
23   Q.   Okay.  Is there a policy at the MPD as to
```

110

1       when you can use the LETS system and for what

2       purpose?

3  A.  You would have to use it for a law

4       enforcement purpose.  Like you wouldn't --

5       let's say I met Allison out somewhere.  I

6       wouldn't obviously say, you know, I met this

7       girl Allison, let me show you her picture,

8       and pull up her picture from LETS to show

9       somebody, because that would not be for any

10      purpose law enforcement-related.  If it's

11      something that's required by me -- if I'm

12      required to pull up a photograph of somebody

13      to put on a piece of paper for my major and

14      my captain and turn that in at the end of the

15      evening, and I pull up a LETS photograph and

16      put it on there, then that's legitimate for

17      me to do that.

18  Q.  Did you tell Lieutenant Crockett -- is that

19      the correct name?  I just had a flashback of

20      Miami Vice.  Was his name Lieutenant

21      Crockett?

22  A.  It is.

23  Q.  Did you tell Lieutenant Crockett as he stood

112

1    Q.   Where did that come from?

2    A.   That was taken on the 19th when she was

3         arrested for giving a false name.

4    Q.   So y'all never got a booking photograph when

5         these 10 people were arrested for

6         prostitution?  There was never a booking

7         photograph taken of any of them; is that

8         right?

9    A.   Not that I'm aware of.  I don't believe

10        there's any of them in there.  There's only

11        previous booking photographs, but I don't

12        believe there's any that were from that

13        date.

14   Q.   All right.  And did you tell me that you had

15        utilized the LETS system prior to

16        Mrs. McQuirter's case in retrieving

17        photographs of people?

18   A.   Yes, sir.

19   Q.   About how many times had you done that?

20   A.   I'm not certain.

21   Q.   More than 10?

22   A.   Yes, sir.

23   Q.   More that 50?

113

A.   It's possible.  I really don't know how many.

Q.   What would be the normal circumstance that
     you would pull a photograph off the LETS
     system?

A.   If we didn't have a photograph -- if I needed
     to obtain a photograph of that person and
     there was not one in the AS-400 system.

Q.   Why wouldn't you just use the booking
     photograph?

A.   If the booking photograph was in the AS-400
     system, I would use it; but if it's not in
     there, I can't use it.

Q.   So there's been a lot of times when the
     cameras don't work at the jail?  Is that what
     you're saying?

A.   I wouldn't be able to quantify how many
     times.  I don't know that it's a lot or not a
     lot or -- there are times when the camera
     system as a whole throughout the city -- I
     mean throughout the police department --
     there are times when that camera system does
     not work.  How many times, I cannot tell
     you.  The majority of the time when we try to

1    assumed that they were going to be

2    photographed when they got to jail.  There

3    would have been no reason why we didn't

4    believe that until we found out that it

5    wasn't just our system that didn't work; it

6    was the system as a whole that didn't work.

7    So we wouldn't have taken a picture with a

8    digital camera like that.

9  Q.  Any particular reason why you didn't go down

10    to the police department when you discovered

11    there was a problem and take photographs with

12    this little digital camera you had?

13  A.  I didn't feel like there was a need to do

14    that at the time.

15  Q.  You thought it would be easier to pull

16    Mrs. McQuirter's photograph off the LETS

17    system; is that right?

18  A.  Right.

19  Q.  Okay.  Has any supervisor or anybody really

20    at the MPD told you in the past that if

21    there's trouble getting a booking photograph

22    to feel free to go on the LETS system to get

23    the photograph?  Has anybody ever told you

1        that?

2    A.   I wouldn't necessarily say they said it in

3        those exact words, but they have indicated

4        that they required that when I turned in this

5        paperwork that's required of me at the end of

6        the evening, that I turn in a photograph of

7        that person whether it be something that was

8        taken from the AS-400 system, something that

9        was taken from LETS, something that was taken

10       off a digital camera.  Whatever the case may

11       be, there's going to be a photograph turned

12       in at the end of the evening.

13   Q.   Okay.  Were you at all involved in the

14       release of Mrs. McQuirter's photograph to the

15       media?

16   A.   No, sir.

17   Q.   Were you consulted about that before it was

18       released?

19   A.   No, sir.

20   Q.   You delivered the photograph to the major and

21       the captain, right?

22   A.   Yes, sir.

23   Q.   All right.  Did you personally give it to him

1

COPY

1        IN THE UNITED STATES DISTRICT COURT

2        FOR THE MIDDLE DISTRICT OF ALABAMA

3            NORTHERN DIVISION

4

5  GWENDOLYN P. MCQUIRTER,
    et al.,
6

7        Plaintiffs,           CASE NUMBER
    vs.                  2:07-cv-00234-MEF-WC
8

9  CITY OF MONTGOMERY, et cet.,
    et al.,
10

        Defendants.

11

12

13        * * * * * * * * * * *

14

15       DEPOSITION OF RONALD COOK, JR., taken

16  pursuant to stipulation and agreement before

17  Heather Barnett, Court Reporter and Commissioner

18  for the State of Alabama at Large, in the Offices

19  of Dunn, King & Associates, 2800 Zelda Road,

20  Suite 100-2, Montgomery, Alabama, on Friday, June

21  29, 2007, commencing at approximately 9:21 a.m.

22

23        * * * * * * * * * * *

DEFENDANT'S
EXHIBIT
"2"

4

|    |                                                      |
|----|------------------------------------------------------|
| 1  | RONALD COOK, JR.                                     |
| 2  | The witness, having first been sworn to              |
| 3  | speak the truth, the whole truth and nothing but     |
| 4  | the truth, testified as follows:                     |
| 5  | EXAMINATION                                          |
| 6  | BY MR. BLEVINS:                                      |
| 7  | Q.   Would you state your full name, please, sir?   |
| 8  | A.   Ronald Cook, Jr.                               |
| 9  | Q.   Mr. Cook, what is your home address?          |
| 10 | A.   2061 Shortline Drive, Montgomery, Alabama,     |
| 11 | 36116.                                              |
| 12 | Q.   And what is your age?                          |
| 13 | A.   40.                                            |
| 14 | Q.   And what is your date of the birth?           |
| 15 | A.   4/10 of '67.                                   |
| 16 | Q.   And are you married?                           |
| 17 | A.   Yes, sir.                                       |
| 18 | Q.   And what is your wife's name?                  |
| 19 | A.   Vyvyan, V-Y-V-Y-A-N, Cook.                     |
| 20 | Q.   And she lives with you here in Montgomery?     |
| 21 | A.   Correct.                                        |
| 22 | Q.   Does she work?                                  |
| 23 | A.   Yes.                                            |

40

Q.   Well, if somebody commits a crime across the
     street there today, can you go arrest them?

A.   Yes.

Q.   And if you go over there and arrest somebody
     today, how are you going to confirm the
     identity according to the policy that's in
     place today?

A.   Just I like I told you right here, that I'm
     going to get the name, date of birth,
     possibly the Social Security number.

Q.   Okay.  I gotcha.  You know that we're here
     today about a lawsuit that's been filed by
     Gwendolyn and Charles McQuirter, correct?

A.   Correct.

Q.   I want to ask you a few questions about the
     McQuirters' lawsuit and the events that
     brought us here today.

         How did you get involved in what I'm
     going to refer to as the McQuirter matter,
     okay?  How did you get involved in that?

A.   Well, I was the on-call PIO that weekend.
     And Lieutenant Pat Crockett call me and
     stated they had a prostitution sting and that

41

1         he had all of the arrest photos available to

2         be disseminated.

3   Q.  Do you remember what date that was?

4   A.  No, I don't.

5   Q.  Do you recall it as being back in September

6         of 2006?

7   A.  Specifically, I don't know which date, but I

8         know it should have been around that time.

9   Q.  Now, just so the record is clear, when you

10        say PI, is that what you're using as the

11        abbreviation for public information officer?

12   A.  Correct.  PIO.

13   Q.  PIO.  Okay.  So when you received this

14        information, it would have been some time on

15        the weekend between 5 p.m. on Friday and

16        8 a.m. on a Monday?

17   A.  Correct.

18   Q.  And who Pat Crockett?

19   A.  He's Bentley's supervisor.

20   Q.  And who is Bentley?

21   A.  K.C. Bentley.  Corporal K.C. Bentley.

22   Q.  And how did Pat Crockett contact you?

23   A.  By SouthernLINC.

42

| | | |
|---|---|---|
| 1 | Q. | And you were not on duty when you were |
| 2 | | contacted, correct? |
| 3 | A. | No. |
| 4 | Q. | Okay.  Do you remember what you were doing? |
| 5 | A. | No. |
| 6 | Q. | Doing something not work-related, I assume? |
| 7 | A. | Right. |
| 8 | Q. | Okay.  All right.  And Pat Crockett -- tell |
| 9 | | me if I misunderstood what you told me.  Pat |
| 10 | | Crockett called you and said there had been |
| 11 | | prostitution sting, and he had photographs of |
| 12 | | people that were arrested? |
| 13 | A. | Correct. |
| 14 | Q. | All right.  Is Pat a male or female? |
| 15 | A. | Male. |
| 16 | Q. | Did Pat tell you anything else? |
| 17 | A. | Yes, that he had them over at the special ops |
| 18 | | building. |
| 19 | Q. | The photos? |
| 20 | A. | Correct. |
| 21 | Q. | All right.  And what did you say to him or |
| 22 | | what else was said? |
| 23 | A. | I asked him was he still going to be there. |

55

1    is not unusual?

2    A.   No.

3    Q.   Okay.  That was a compound question.  Have

4         you seen that before where a photograph might

5         be released to the media that's not a booking

6         photograph?

7    A.   Right.

8    Q.   So you didn't find this at all unusual that

9         page 13 of Exhibit #1 was not a booking

10        photograph?

11   A.   No.

12   Q.   Okay.  After you issued the press release to

13        the media, which is shown there on page 2 of

14        Exhibit #1, did you have any further

15        involvement with the McQuirter matter?

16   A.   Yes.

17   Q.   All right.  And what further involvement did

18        you have?

19   A.   Mrs. McQuirter's husband called my office.

20   Q.   And do you know what date that would have

21        been?

22   A.   No, I don't.

23   Q.   Can you estimate for me how long it was after

1    you issued the press release that he ticketed

2    you?

3  A.  Couple or two or three day.

4  Q.  Okay.  And did he call you at the MPD at your

5    office?

6  A.  Correct.

7  Q.  And tell me about that discussion.

8  A.  Answered the phone, and he identified himself

9    and told me that there was no way possible

10    that the McQuirter picture -- that was his

11    wife, and there was no way possible she could

12    have been out there because she was with

13    him.  At that time, I told him, well, sir, I

14    have to put you in touch with the primary

15    PIO, which was Huey Thornton, and that's when

16    the call was transferred.

17  Q.  Do you recall anything else being said during

18    that discussion with Mrs. McQuirter?

19  A.  No.

20  Q.  Do you recall about how long that discussion

21    lasted?

22  A.  It was less than five minutes.

23  Q.  Did Mrs. McQuirter appear to be angry during

57

1        that discussion?

2    A.   He didn't appear to be angry.

3    Q.   Okay.  All right.  Did you have any further

4        involvement with the McQuirter matter after

5        that?

6    A.   As to what?

7    Q.   In any respects.

8    A.   Well, I sent -- I guess Captain Thornton

9        talked to them, and he wanted me to e-mail

10       him my release, my specific release from

11       September 16th.

12   Q.   Captain Thornton asked you to do that?

13   A.   Right.

14   Q.   All right.  Now, I was thinking while you

15       were talking.  Did you say Captain Thornton

16       wanted you to e-mail him, meaning Captain

17       Thornton, a release?  Or what did you just

18       tell me?

19   A.   Captain Thornton called me after he talked to

20       Mr. McQuirter, after I transferred the call,

21       and asked me to send him the release that I

22       sent to the media.

23   Q.   And the release being page 2 of Exhibit #1?

61

1         and that's when he wanted them.

2    Q.   Okay.  All right.  Are you familiar with the

3         Law Enforcement Tactical System?

4    A.   Yes, I'm familiar with it.

5    Q.   Is that known as LETS?

6    A.   Correct.

7    Q.   What is LETS?

8    A.   Law Enforcement Tactical System.

9    Q.   Right.  But a little bit more specific,

10        what's its purpose?

11   A.   It's an investigative tool.  We go in the

12        LETS, and we can pull up detailed information

13        on persons.  And we use it as an

14        investigative tool.

15   Q.   Is there a policy at the MPD as to when LETS

16        can be used?

17   A.   You can use it as an investigative tool.  I

18        haven't seen anything in writing as to when

19        you can use LETS.  You might have a

20        disclaimer with LETS when LETS can be used.

21   Q.   And LETS accesses, I assume -- and let me ask

22        you this.  I assume LETS accesses some

23        information somewhere where this information

62

```
 1              is retrieved; is that right?

 2                   MS. FEHL:  Object to the form.

 3     A.   Repeat your question.

 4     Q.   Yeah.  Okay.  The information that LETS

 5          retrieves comes from where?

 6     A.   I have no idea, sir.  You'd have to get with

 7          LETS and see where they ascertain that

 8          information.

 9     Q.   So you don't have any idea where their

10          information is coming from?

11     A.   That's in the LETS system.

12     Q.   Right.

13     A.   No, I don't know where they get their

14          information from, but I know it's there.

15     Q.   It's not hooked into the Department of Public

16          Safety's drivers records information?

17     A.   Specifically, I don't know where they get

18          their information from.  I could be telling

19          you something wrong if I start to assume

20          where they got it from.  So I just take the

21          system as what it's worth, and I use the

22          information that we have on it.

23     Q.   Is there like a main computer where you can
```

63

1         access LETS or can everybody access it

2         through their individual computers?

3    A.   If you're in an investigative division, I

4         think you should be able to get it through

5         your terminal; but you have to be given

6         access to it.

7    Q.   And who is given access to it?

8    A.   It should be someone in computer information

9         or planning and technology division.

10   Q.   Can you access LETS?

11   A.   Can I access it?

12   Q.   Yes.

13   A.   Yes.

14   Q.   Can a police officer, if he's needing

15        information, go in and access LETS?

16   A.   Not necessarily because he has to have a

17        password to get in it.

18   Q.   Is there a certain rank where you're given a

19        password, or how are passwords determined as

20        far as who can access LETS?

21   A.   Generally, if you're in an investigative

22        field, you'll be given access.  As far as

23        just general officers, I can't answer that

64

1          question.

2    Q.    Okay.   You got any idea how long LETS has

3          been used at the MPD?

4    A.    No, I don't.

5    Q.    Has it been used the entire time you've been

6          there?

7    A.    I don't know if it was used in '94 or not.

8    Q.    How far back do you recall it being used?

9    A.    When I came to the detective division in '04,

10          I still can't recollect whether it was being

11          used or not then.

12    Q.    And as far as the use of LETS, have you been

13          trained or given guidelines on when you can

14          using the system?

15    A.    Yes.

16    Q.    And how was that relayed to you?

17    A.    Through a person that trained me.  This is

18          when we use LETS.  When you need to find out

19          additional information on a person that we

20          might not have in our data base at the PD, we

21          log on to LETS.

22    Q.    Were there any limitations on retrieving

23          information such as did the person have to be

```
 1              arrested or charged with a certain type

 2              crime, or were there any limitations placed

 3              on the use of the system?

 4      A.      Specifically, the limitations, I can't say if

 5              it was arrested, because we might just be

 6              investigating a case, and they haven't been

 7              arrested; and they just might be a person of

 8              interest.  You have to get some type of

 9              intelligence on them.

10      Q.      Have you ever retrieved photographs through

11              the LETS system?

12      A.      Yes.

13      Q.      Do you know where those photographs come

14              from?

15      A.      LETS system.

16      Q.      I mean do you know where they're coming from,

17              the source of the photograph, other than

18              coming through the LETS system?

19      A.      Well, it has Department of Motor Vehicles on

20              it, but it's a LETS system.  I just can't sit

21              here and tell you exactly where they come

22              from.

23      Q.      Can you think of any reason -- if we suppose
```

## IN THE UNITED STATES DISTRICT COURT FOR
## THE MIDDLE DISTRICT OF ALABAMA
## NORTHERN DIVISION

GWENDOLYN P. MCQUIRTER, and )
CHARLES E. MCQUIRTER,                )
                                                     )
   Plaintiffs,                              )
                                                     )
v.                                                   )
                                                     )
CITY OF MONTGOMERY,                 )
K.C. BENTLEY, and RON COOK,      )
                                                     )
   Defendants and Third-Party Plaintiffs,   )
                                                     )
v.                                                   ) Case No. **2:07-CV-234-MEF-WC**
                                                     )
TIFFANY MICHELE RILEY, and      )
ROOSEVELT PERKINS,                    )
                                                     )
   Third-Party Defendants.            )

### AFFIDAVIT OF CAPTAIN HUEY THORNTON

     Before me, the undersigned authority, personally appeared Huey Thornton, who is

known to me and who, being first duly sworn, deposed on oath, and says as follows:

     My name is Huey Thornton and I am over nineteen (19) years of age. I am

currently employed for the City of Montgomery as a Captain with the Montgomery

Police Department ("MPD"). I am the Public Information Officer in Public and Media

Relation and responsible for the flow of information from the Police Department to the

media and general public. It is in that capacity that I state the following:

     1.    Written new releases are prepared by the public information officer or

other personnel at the discretion of the chief of police. Primarily, we release information

when we feel an incident is of significant public interest, if we are seeking to expose a

public safety issue via the media or if we are actively seeking a criminal suspect. As a

1

DEFENDANT'S
EXHIBIT

tabbies

"3"

practice we always send press releases to the media on high profile arrests or crimes (murders, murder arrests, robbery arrests, serious assault arrests) and large scale special operations (large scale drug arrests, prostitution stings, neighborhood take down operations). These are just a few cases of when we send out press releases.

2. On September 19, 2006, I was advised that a Mr. Charles McQuirter had contacted MPD in reference to his wife, Gwendolyn McQuirter's, photograph being shown in the local media with nine other subjects who were arrested in connection with prostitution.

3. I contacted Lt. Ron Cook and asked him to look into the matter due to the fact that he was the public information officer on duty and released the photographs he received from Special Operations to the media.

4. Later that day, Lt. Cook contacted me and advised me that one of the women arrested assumed the identity of Gwendolyn McQuirter and was subsequently bonded out of jail under the assumed identity. Lt. Cook further advised that the photograph he received from Special Operations for Gwendolyn McQuirter was a photograph from LETS rather than a booking photograph from the night of the arrest.

5. On September 20, 2006, at approximately 10:45, I contacted Mr. Charles McQuirter. I advised Mr. McQuirter of the following: That on Friday, September 15, 2006 there was a prostitution sting conducted by the Montgomery Police Department in the area of Mobile Highway and the West South Boulevard. During the operation a female was arrested who assumed the identity of his wife. This person also bonded out of the city jail under the false identity. As a result of the person assuming his wife's identity, officers inadvertently released the wrong photograph and information to the media. I told him that officers from our Special Operations Division were able to identify

and take into custody the person who assumed his wife's identity. The person was identified as Tiffany Riley and she stated that she was an old friend of Gwendolyn McQuirter.

6.    I then advised Mr. McQuirter that I would send a press release with the proper information and photograph to all of the media. I further advised Mr. McQuirter that the Montgomery Advertiser was the only news agency with his wife's photograph on their website and that I had contacted them on September 19, 2006 and had that information removed. Attached to my affidavit is a copy of the original press release of September 16, 2006 and the corrected press release of September 20, 2006.

7.    It is not uncommon to release photographs to the media from various sources. In some cases, our system becomes inoperable and we are unable take or access photographs through our internal resources; therefore we rely on alternate sources such as LETS or other agencies. It is not uncommon to use LETS if an individual does not have a photograph in our internal files. Another example would be for use in police bulletins (lookouts) where we are seeking individuals who have never been arrested and photographed by the Montgomery Police Department.

I have read the above and foregoing affidavit consisting in total of three (3) pages and state that it is true and correct to my present knowledge and information.

H. D. _____ #493
Capt. Huey Thornton

**SWORN to and SUBSCRIBED before me this the** 29th **day of October,**
**2007.**

Susan W. Grant
Notary Public
My Commission Expires 07/11/11

3

# IN THE UNITED STATES DISTRICT COURT FOR
## THE MIDDLE DISTRICT OF ALABAMA
## NORTHERN DIVISION

|  |  |  |
|---|---|---|
| **GWENDOLYN P. MCQUIRTER**, and **CHARLES E. MCQUIRTER**, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| **CITY OF MONTGOMERY**, **K.C. BENTLEY**, and **RON COOK**, Defendants and Third-Party Plaintiffs, | ) ) ) ) | |
| v. | ) ) | Case No. **2:07-CV-234-MEF-WC** |
| **TIFFANY MICHELE RILEY**, and **ROOSEVELT PERKINS**, | ) ) ) | |
| Third-Party Defendants. | ) ) | |

## AFFIDAVIT OF MARK DRINKARD

Before me, the undersigned authority, personally appeared Mark Drinkard, who is known to me and who, being first duly sworn, deposed on oath, and says as follows:

My name is Mark Drinkard and I am over nineteen (19) years of age. I am currently employed as a Lieutenant with the Planning and Technology Bureau of the Montgomery Police Department which is assigned to the Administrative Division. It is in that capacity that I state the following:

1.    I am the Agency Information Security Officer "AISO" for Law Enforcement Tactical Systems "LETS" which is provided by the Alabama Criminal Justice Information Center "ACJIC" and used by the Montgomery Police Department.



DEFENDANT'S EXHIBIT "5"

2.      LETS provides a database obtained from many different agency records such as records from the Bureau of Vital Statistics, the Administrative Office of the Courts, the Department of Public Safety, and the Department of Revenue.

3.      In order for someone to receive LETS access they must sign up and request admission from AlaCop.  This site will then send me an email showing the requestors name and departmental information.

4.      Once I have granted admittance to LETS, the requestor can choose their password to activate the system.  All access to the system is then tracked by the Alabama Criminal Justice Information Center "ACJIC".

5.      Our records indicate Lieutenant Ron Cook and Corporal Kristen Bentley have been granted access to use LETS.

I have read the above and foregoing affidavit consisting in total of two (2) pages and state that it is true and correct to my present knowledge and information.

_LT Mark Drinkard 086_
Lt. Mark Drinkard

**SWORN to and SUBSCRIBED** before me this the _30th_ day of October, **2007.**

_Betty S. Ruffin_
Notary Public
My Commission Expires _10-15-08_

IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

GWENDOLYN P. MCQUIRTER, and )
CHARLES E. MCQUIRTER, )
                                                 )
    Plaintiffs, )
                                                 )
v. )
                                                 )
CITY OF MONTGOMERY, )
K.C. BENTLEY, and RON COOK, )
                                                 )
    Defendants and Third-Party Plaintiffs, )
                                                 )
v. )  Case No. **2:07-CV-234-MEF-WC**
                                                 )
TIFFANY MICHELE RILEY, and )
ROOSEVELT PERKINS, )
                                                 )
    Third-Party Defendants. )

## AFFIDAVIT OF PATRICK MURPHY

    Before me, the undersigned authority, personally appeared Patrick Murphy, who is known to me and who, being first duly sworn, deposed on oath, and says as follows:

    My name is Patrick Murphy. I am over nineteen years of age. I am employed with the City of Montgomery as the Montgomery Municipal Court Administrator. It is in that capacity that I state the following:

    1.    I am the custodian of records for the Municipal Court of Montgomery, Alabama. Attached to my affidavit are Certified Copies of the following cases from Municipal Court:

        *a.*    *Municipality of Montgomery v. Gwendolyn McQuirter (AKA Tiffany Riley),* Case Number 2006CRA006010A in which the case action

1


DEFENDANT'S EXHIBIT "6"

summary indicates that the defendant pled guilty as charged to Prostitution on September 20, 2006.

      b.    *Municipality of Montgomery v. Tiffany Michele Riley),* Case Number 2006CRA006097A in which the case action summary indicates that the defendant pled guilty as charged to Giving False Statement to Law Enforcement Officer on September 20, 2006.

2.    These records are a true and complete copy of the Montgomery Municipal Court Records pertaining to the aforementioned cases.

I have read the above and foregoing affidavit consisting in total of two (2) pages and state that it is true and correct to my present knowledge and information.

 

Patrick Murphy, Court Administrator

**SWORN to and SUBSCRIBED before me this the** 29th **day of October, 2007.**

Notary Public
My Commission Expires

NOTARY PUBLIC STATE OF ALABAMA AT LARGE
MY COMMISSION EXPIRES: Mar 28, 2011
BONDED THRU NOTARY PUBLIC UNDERWRITERS

2

State of Alabama
City of Montgomery

Form MMC-1010    Rev. 10/03

# COURT RECORD
# CASE ACTION SUMMARY

Case Number

**2006CRA006010A**

PAGE 1 OF 4

IN THE MUNICIPAL COURT OF _____ MONTGOMERY _____ , ALABAMA
*(Name of Municipality)*

MUNICIPALITY OF __ MONTGOMERY __ v. __ GWENDOLYN MCQUIRTER __ *AKA*

Defendant *(Tiffany Riley)*

## DEFENDANT IDENTIFICATION AND INFORMATION

| Social Security Number 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 | Date of Birth 02/27/1972 | Home Address 4418 LOWELL ROAD | | |
|---|---|---|---|---|
| Race B | Sex F | City MONTGOMERY | State AL | Zip Code |
| Height | Weight | Home Telephone Number | | |
| Eye Color | Hair Color | Employer Name & Address | | |
| Driver License State | Driver License Number | City | State | Zip Code |
| Other / Distinguishing Features | | Employer Telephone Number | | |

---

Offense / Charge: **(20E) PROSTITUTION**

Complainant - Victim / Arresting Officer: TERRANCE JAMES    1170 JAMES

Bondsman / Surety: BOND JAMES BOND,,,    Bond Amount: 500.00

| Date of Offense | Date Warrant Issued | Date Committed to Jail | Date Released on Bond | Arraignment Date | Trial Date |
|---|---|---|---|---|---|
| 09/15/2006 | | | | 10/11/2006 | |

---

|  PROSECUTOR NAME: | DEFENSE COUNSEL NAME: |
|---|---|
| ARRAIGNMENT: *Brooks Russell* | ARRAIGNMENT: *Thick* |
| TRIAL: | TRIAL: |

PLEA OF DEFENDANT: ☑ GUILTY AS CHARGED   ☐ NOT GUILTY   ☐ GUILTY OF:

*Co Explaned Rights – Her real name is Tiffany Riley. – △ voluntarily Wiens*

### ADJUDICATION

☒ GUILTY AS CHARGED   ☐ NOT GUILTY   ☐ NOL-PROSSED   ☐ DISMISSED

☐ GUILTY OF: _____

SEP 2 0 2006

DATE          JUDGE, CITY OF MONTGOMERY

---

### ACTIONS, JUDGMENTS, CASE NOTES

SENTENCED TO _____ DAYS IN JAIL, SUSPEND _____ DAYS.

FINE: $ 150    COURT COST: $ 9.00    SUBPOENA / ALIAS WARRANT FEES: $

TOTAL $ 34.00    PAYMENT DUE DATE: 12/19/06

**EXHIBIT**

*a.*

I HEREBY CERTIFY THAT THIS IS A TRUE AND
CORRECT COPY OF THE ORIGINAL DOCUMENT ON
FILE IN THE MONTGOMERY MUNICIPAL COURT.

PATRICK J. MURPHY
CLERK OF
MONTGOMERY MUNICIPAL COURT

DATE: 10-29-2007

| State of Alabama<br>Unified Judicial System<br>Form C-64(a)(front) Rev. 11/92 | **DEPOSITION** | Warrant Number<br>*2006m03548*<br>Case Number |
|---|---|---|

**IN THE   MUNICIPAL   COURT OF   MONTGOMERY,   ALABAMA**
(Circuit, District or Municipal)        (Name of Municipality or County)

☐ STATE OF ALABAMA          ☒ MUNICIPALITY OF   **MONTGOMERY**

v.   Gwendolyn McQuirter                                            , Defendant

---

## INSTRUCTIONS: COMPLETE THE FOLLOWING INFORMATION ON THE ACCUSED

Name of Accused (or Alias)   Gwendolyn McQuirter          AKA                    Telephone Number ( ) -

| Social Security Number 409 - 71 - 8696 | Driver's License Number | Date of Birth 02 /27 / 1972 | Age 34 | Race **Black** | Sex F |
|---|---|---|---|---|---|

| Height 5' 00" | Weight 145 | Hair Blk | Eyes Bro | Complexion med |
|---|---|---|---|---|

| Address of Accused 4418 Lowell Rd | City Montgomery | State AL | Zip |
|---|---|---|---|

Name of Employer  Unemployed                          Employer's Telephone Number ( ) -

| Address of Employer | City Montgomery | State AL | Zip |
|---|---|---|---|

## INSTRUCTIONS: COMPLETE THE FOLLOWING INFORMATION ON THE OFFENSE

Offense:   Prostitution

Date and Time of Offense: 09 /15 / 2006 ⦿ At ◯ Between        and 2015    hours

Place of Occurrence:   3300 Blk. Mobile hwy.Montgomery, Al

Person Attacked or Property Damaged: _____

How Attacked: _____

Did Accused Possess or Use a Weapon?  ☐ Yes   ⦿ No    Type: _____

Damage Done or Injuries Received: _____

Value of Property: _____

Details of Offense: _____

On the listed date and time Cpl. James while working in an undercover capacity in the 3300 Blk. of Mobile Hwy., was approached by the defendant. The defendant walked over to Cpl. James's vehicle and got in.The defendant then asked Cpl. James "what was up". Cpl. James told the defendant he wanted some head. The defendant told Cpl. James that it would cost him $20.00. Cpl. James agreed to the price. The defendant asked Cpl. James if he was the police. Cpl. James replied "no". Cpl. James then asked the defendant if she was the police. The defendant responded by pulling up her shirt and exposing her breast. Cpl. James then drove the defendant to Community Policing where she was taken into custody. The defendant was charged with prostitution and transported to the city jail.

I HEREBY CERTIFY THAT THIS IS A TRUE AND CORRECT COPY OF THE ORIGINAL DOCUMENT ON FILE IN THE MONTGOMERY MUNICIPAL COURT.

PATRICK J. MURPHY
CLERK OF
MONTGOMERY MUNICIPAL COURT
DATE: 10-29-2007

Form C-64 (a) (back)    Rev. 11/92

## DEPOSITION

Any Law Enforcement Agency Contacted?  ☐ Yes    ☐ No
If yes, which one? _____

### INSTRUCTIONS: COMPLETE THE FOLLOWING INFORMATION ABOUT YOURSELF

| Name of Complainant Cpl. T.D. James | ID: 1170 | Telephone Number |
|---|---|---|

| Social Security Number | Driver's License Number | Date of Birth | Age | Race | Sex |
|---|---|---|---|---|---|

| Home Address | City | State | Zip |
|---|---|---|---|

| Name of Employer MONTGOMERY POLICE DEPARTMENT | Employer's Telephone Number |
|---|---|

| Address of Employer | City | State | Zip |
|---|---|---|---|

I make this statement for the purpose of securing a **WARRANT/SUMMONS** against the named accused. I understand that I am instituting a criminal proceeding and cannot dismiss this case. I further understand that if any of the foregoing facts are untrue, I may, in addition to any other punishment provided by law, be taxed with court costs in this proceeding.

Sworn to and Subscribed before me this

15th _____ day of

September 2006

_____
Judge/Clerk/Magistrate

_Cpl. T.D. James  # 1174_
Complainant

### WITNESSES

| Name | Address | Telephone Number |
|---|---|---|
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

### MAGISTRATE NOTES

Warrant or Summons Issued?  ☐ Yes    ☐ No        Warrant Number: 2006MO3548

State of Alabama
Unified Judicial System

Form CR-6          Rev. 8/98

# COMPLAINT

(Felonies, Misdemeanors, or Violations -
District or Municipal Court)

Warrant Number

**2006M03548**

Case Number

---

IN THE ____**MUNICIPAL**____ COURT OF ____**MONTGOMERY**____, ALABAMA

(Circuit, District, or Municipal)          (Name of Municipality or County)

☐ STATE OF ALABAMA

☒ MUNICIPALITY OF MONTGOMERY v. ____**GWENDOLYN MCQUIRTER (001021435A)**____

Defendant (NWS Jacket Number)

---

Before me, the undersigned authority, personally appeared this day the undersigned complainant who, upon first being duly sworn, states on oath that he/she has probable cause for believing, and does believe that ____**GWENDOLYN MCQUIRTER**____

, Defendant, whose name is otherwise unknown to the complainant, did, prior to the commencement of this action, on or about ____09/15/2006____ (date of occurrence) commit the offense of ____**PROSTITUTION**____ within the

☐ County of _____

☒ City/Town of ____**MONTGOMERY**____ or in the police jurisdiction thereof, in that he/she did: (State specific facts here. Continue on a separate sheet of paper if needed.) (select as appropriate):

(b) ☒ solicit, compel or coerce any person to have sexual intercourse or participate in any natural or unnatural sexual act, deviate sexual intercourse, or sexual contact for monetary consideration or other thing of marketable value;

(c) ☐ agree to engage in sexual intercourse, deviant sexual intercourse, or sexual contact with another or participate in the act for monetary consideration or other thing of marketable value and give or accept monetary consideration or other thing of value in furtherance of the agreement;

(d)(1) ☐ knowingly cause or aid a person to commit or engage in prostitution;

(d)(2) ☐ knowingly procure or solicit patrons for prostitution;

(d)(3) ☐ knowingly provide persons or premises for prostitution purposes;

(d)(4) ☐ knowingly receive or accept money or other thing of value pursuant to a prior agreement with any person whereby he or she participates or is to participate in the proceeds of any prostitution activity;

(d)(5) ☐ knowingly operate or assist in the operation of a house of prostitution or prostitution enterprise,

in violation of

☐ Section _____, Alabama Code 1975.

☒ Municipal Ordinance Number ____125-79____ which embraces Section ____13A-12-121____ Alabama Code 1975, previously adopted, effective and in force at the time the offense was committed.

☐ Other

Sworn to and Subscribed before me this

15TH _____ day of          Complainant          -DET. T. D. JAMES #1170

SEPTEMBER _____, 2006          MPD
                                   Address

Judge/Magistrate/Warrant Clerk          Telephone Number

## WITNESSES

| Name | Address | Telephone Number |
|------|---------|------------------|
|      |         |                  |
|      |         |                  |
|      |         |                  |
|      |         |                  |

Additional Witnesses on Reverse Side.

I HEREBY CERTIFY THAT THIS IS A TRUE AND
CORRECT COPY OF THE ORIGINAL DOCUMENT ON
FILE IN THE MONTGOMERY MUNICIPAL COURT.

PATRICK J. MURPHY
CLERK OF
MONTGOMERY MUNICIPAL COURT

DATE: 10-29-2007

| State of Alabama<br>Unified Judicial System | **WARRANT OF ARREST**<br>(Felonies, Misdemeanors, or Violations) | Warrant Number<br>2006M03548 |
|---|---|---|
| Form CR-58 (front)          Rev. 8/98 | | Case Number |

IN THE _____ **MUNICIPAL** _____ COURT OF _____ **MONTGOMERY** _____, ALABAMA
<br>(Circuit, District, or Municipal)              (Name of Municipality or County)

☐ STATE OF ALABAMA

☒ MUNICIPALITY OF MONTGOMERY v. _____ **GWENDOLYN MCQUIRTER**  (001021435A) _____
<br>Defendant (NWS Jacket Number)

## TO ANY LAW ENFORCEMENT OFFICER WITHIN THE STATE OF ALABAMA:

☒ Probable cause has been found on a Complaint filed in the court against (name or description of person to be arrested)

GWENDOLYN MCQUIRTER

charging the offense of   **PROSTITUTION** _____

_____ as described in the Complaint.

☐ An indictment has been returned by the grand jury of this county against (name or description of person to be arrested)

charging the offense of _____

_____ as described in the Complaint.

☒ **YOU ARE THEREFORE ORDERED** to arrest the person named or described above and bring that person before a judge or magistrate of this court to answer the charges against that person and have with you then and this Warrant of Arrest with your return thereon.

If a judge or magistrate of this court is unavailable, or if the arrest is made in another county, you shall then take the accused person before the nearest or most accessible judge or magistrate in the county of the arrest.

☒ You may release the accused person without taking the accused before a judge or magistrate:

☒ If the accused person enters into a bond in the amount of $   **500.00**   with sufficient sureties approved by an authorized officer or by depositing cash or negotiable bonds in the amount with the court clerk.
<br>---OR---

☒ If the accused person posts an appearance bond in the amount of $   **500.00**

☐ On his or her personal recognizance.

Friday, September 15, 2006  09:51 PM
<br>Date

I HEREBY CERTIFY THAT THIS IS A TRUE AND CORRECT COPY OF THE ORIGINAL DOCUMENT ON FILE IN THE MONTGOMERY MUNICIPAL COURT.

_____
<br>Judge/Court Clerk/Magistrate/Warrant Clerk

PATRICK J. MURPHY
<br>CLERK OF
<br>MONTGOMERY MUNICIPAL COURT

DATE: 10-29-2007

WARRANT OF ARREST
(Felonies, Misdemeanors, or Violations)

## CERTIFICATE OF EXECUTION

I, the undersigned law enforcement officer, certify that I executed the foregoing **WARRANT OF ARREST** by arresting the accused person named (or described) therein at ___2015 HRS___ o'clock ☐ a.m. ☒ p.m.

on the ___15TH___ day of ___SEPTEMBER___ , 20 ___06___

in ___MONTGOMERY___ COUNTY, ALABAMA.

After arrest, the accused person was:

☐ Released as authorized at _____ o'clock ☐ a.m. ☐ p.m. _____ , 20 _____

☒ Taken before ☐ Judge ☒ Magistrate at ___2151 HRS___ o'clock ☐ a.m. ☒ p.m.

___15TH SEPTEMBER___ , 20 ___06___

| | |
|---|---|
| ___9-15-06___ | ___T.O. Jones #1124 / CPL LMPD___ |
| Date | Signature/Title/Agency |

---

## IDENTIFICATION OF ACCUSED PERSON

| Name of Accused Person | Telephone Number |
|---|---|
| GWENDOLYN MCQUIRTER | 334-281-5725 |

| Social Security Number | Drivers License Number & State | Date of Birth | Age | Race | Sex |
|---|---|---|---|---|---|
| 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 | | 02/27/1972 | | B | F |

| Height | Weight | Hair | Eyes | Complexion |
|---|---|---|---|---|
| 500 | 145 | Black | Brown | |

| Address of Accused | City | State | Zip Code |
|---|---|---|---|
| 4418 LOWELL ROAD | MONTGOMERY | AL | |

| Name of Employer | Telephone Number |
|---|---|
| | |

| Address of Employer | City | State | Zip Code |
|---|---|---|---|
| | | | |

### WITNESSES

| Name | Address | Telephone Number |
|---|---|---|
| | | |
| | | |
| | | |

---

### ACKNOWLEDGEMENT BY ACCUSED PERSON

☐ I hereby acknowledge that at the time of my release from custody I was directed to appear in person before the court, as follows:

Place: ___320 NORTH RIPLEY STREET, MONTGOMERY, ALABAMA 36104-2722 (334) 241-2776___

Date: _____ , 20 _____

Time: _____ o'clock ☐ a.m. ☐ p.m., and as thereafter needed until discharged.

☐ I promise to appear as directed before the court, as follows:

Place: ___320 NORTH RIPLEY STREET, MONTGOMERY, ALABAMA 36104-2722 (334) 241-2776___

Date: _____ , 20 _____

Time: _____ o'clock ☐ a.m. ☐ p.m., and as thereafter needed until discharged.

| | |
|---|---|
| _____ | _____ |
| Date | Signature of Accused Person |

State of Alabama
City of Montgomery

Form MMC-1010     Rev. 10/03

# COURT RECORD
# CASE ACTION SUMMARY

Case Number

**2006CRA006097A**

PAGE 1 OF 4

## IN THE MUNICIPAL COURT OF _____ MONTGOMERY _____ , ALABAMA
*(Name of Municipality)*

## MUNICIPALITY OF    **MONTGOMERY**    v.    **TIFFANY MICHELE RILEY**
Defendant

### DEFENDANT IDENTIFICATION AND INFORMATION

| Social Security Number 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 | Date of Birth 02/27/1972 | Home Address 846 CORBETT ST | | |
|---|---|---|---|---|
| Race B | Sex F | City MONTGOMERY | State AL | Zip Code 36108 |
| Height | Weight | Home Telephone Number | | |
| Eye Color | Hair Color | Employer Name & Address | | |
| Driver License State AL | Driver License Number 7321061 | City | State | Zip Code |
| Other / Distinguishing Features: | | Employer Telephone Number | | |

Offense / Charge:    **(14Q)   FALSE STATEMENT-GIVING FALSE NAME, ETC. TO LE OFF.**

Complainant - Victim / Arresting Officer:    TERRANCE JAMES    1170 JAMES

Bondsman / Surety: _____    Bond Amount:    0.00

| Date of Offense | Date Warrant Issued | Date Committed to Jail | Date Released on Bond | Arraignment Date | Trial Date |
|---|---|---|---|---|---|
| 09/15/2006 | | | | 09/20/2006 | |

**PROSECUTOR NAME:**    **DEFENSE COUNSEL NAME:**

ARRAIGNMENT: *Buster Russell*    ARRAIGNMENT: *Thub*

TRIAL: _____    TRIAL: _____

PLEA OF DEFENDANT: ☑ GUILTY AS CHARGED    ☐ NOT GUILTY    ☐ GUILTY OF:

9/20 *Explained rights — △ voluntarily waives*

### ADJUDICATION

☒ GUILTY AS CHARGED    ☐ NOT GUILTY    ☐ NOL-PROSSED    ☐ DISMISSED

☐ GUILTY OF: _____

SEP 2 0 2006    *(W. M)*

DATE    JUDGE, CITY OF MONTGOMERY

### ACTIONS, JUDGMENTS, CASE NOTES

SENTENCED TO _____ DAYS IN JAIL, SUSPEND _____ DAYS

FINE:  $ 350    COURT COST:  $ 191.00    SUBPOENA / ALIAS WARRANT FEES:  $ _____

TOTAL F___  $ 541.00    PAYMENT DUE DATE: 12/19

EXHIBIT
**6.**

I HEREBY CERTIFY THAT THIS IS A TRUE AND
CORRECT COPY OF THE ORIGINAL DOCUMENT ON
FILE IN THE MONTGOMERY MUNICIPAL COURT.

PATRICK J. MURPHY
CLERK OF
MONTGOMERY MUNICIPAL COURT

DATE: 10-29-2007

| State of Alabama | | Warrant Number |
|---|---|---|
| Unified Judicial System | **DEPOSITION** | 2006MO3609 |
| Form C-64(a)(front)  Rev. 11/92 | | Case Number |

IN THE    **MUNICIPAL** _____    **COURT OF**    **MONTGOMERY,** _____    **ALABAMA**

(Circuit, District or Municipal)    (Name of Municipality or County)

☐ STATE OF ALABAMA        ☒ MUNICIPALITY OF    **MONTGOMERY**

v.    Tiffany Michele Riley _____ , Defendant

---

### INSTRUCTIONS: COMPLETE THE FOLLOWING INFORMATION ON THE ACCUSED

| Name of Accused (or Alias) Tiffany Michele Riley | AKA | | | Telephone Number (334)      - | |
|---|---|---|---|---|---|
| Social Security Number 408 - 17 - 9921 | Driver's License Number 7321061 | | Date of Birth 02 /27 / 1972 | Age 26 | Race **Black** | Sex F |
| Height 5' 00" | Weight 150 | Hair Blk | Eyes Bro | Complexion Med | |
| Address of Accused 846 Corbett St. | | City Montgomery | | State AL | Zip |
| Name of Employer unemployed | | | Employer's Telephone Number (   )      - | | |
| Address of Employer | | City Montgomery | | State AL | Zip |

### INSTRUCTIONS: COMPLETE THE FOLLOWING INFORMATION ON THE OFFENSE

Offense:    Giving A False Name To A L.E.O.

Date and Time of Offense:  09 /15 / 2006  ⦿ At  ◯ Between ____ and  2015 ____ hours

Place of Occurrence:    3300 Blk. Mobile Hwy. Montgomery, Al

Person Attacked or Property Damaged: _____

How Attacked: _____

_____

Did Accused Possess or Use a Weapon?    ☐ Yes    ⦿ No    Type: _____

Damage Done or Injuries Received: _____

Value of Property: _____

Details of Offense: _____

On the listed date and time the defendant was arrested for prostitution The defendant while being processed stated her name was Gwendolyn McQuirter, DOB 2-27-72. Cpl. James signed a warrant and placed the defendant in the city jail as Gwendolyn McQuirter. On 9-19-06 it was learned the defendant had provided a false name and that her name was actually Tiffany Riley, DOB 02-27-72 . On 09-19-06 the defendant was arrested in the 1000 Blk. of Ewell St. and transported to Special Operations. The defendat was read her rights using the Montgomery Police Department rights form. The defendant volunteered to make a statement. The defendant  stated she lied about her name because she had two (2) outstanding capias warrants. The defenadnt was charged with Giving a False Name to a L.E.O and Prostitution. The defendant was then transported to the city jail.

I HEREBY CERTIFY THAT THIS IS A TRUE AND
CORRECT COPY OF THE ORIGINAL DOCUMENT ON
FILE IN THE MONTGOMERY MUNICIPAL COURT.

_Patrick J. Murphy_

PATRICK J. MURPHY
CLERK OF
MONTGOMERY MUNICIPAL COURT

DATE: _10-29-2007_

Form C-64 (a) (back) Rev. 11/92

# DEPOSITION

| Any Law Enforcement Agency Contacted? ☐ Yes ☐ No |
|---|
| If yes, which one? |

**INSTRUCTIONS: COMPLETE THE FOLLOWING INFORMATION ABOUT YOURSELF**

| Name of Complainant | | | | Telephone Number | |
|---|---|---|---|---|---|
| T.D. James | ID: 1170 | | | | |
| **Social Security Number** | **Driver's License Number** | **Date of Birth** | **Age** | **Race** | **Sex** |
| | | | | | |
| **Home Address** | | **City** | | **State** | **Zip** |
| | | | | | |
| **Name of Employer** | MONTGOMERY POLICE DEPARTMENT | | | **Employer's Telephone Number** | |
| **Address of Employer** | | **City** | | **State** | **Zip** |
| | | | | | |

I make this statement for the purpose of securing a **WARRANT/SUMMONS** against the named accused. I understand that I am instituting a criminal proceeding and cannot dismiss this case. I further understand that if any of the foregoing facts are untrue, I may, in addition to any other punishment provided by law, be taxed with court costs in this proceeding.

Sworn to and Subscribed before me this 19th day of September, 2006.

Amanda Guffey
Judge/Clerk/Magistrate

Cpl. T.D. James # 1170
Complainant

## WITNESSES

| Name | Address | Telephone Number |
|---|---|---|
| | | |

## MAGISTRATE NOTES

Warrant or Summons Issued? ☒ Yes ☐ No Warrant Number: 2006MO31609

| State of Alabama<br>Unified Judicial System | # COMPLAINT | Warrant Number<br>2006M03609 |
|---|---|---|
| | (Felonies, Misdemeanors, or Violations -<br>District or Municipal Court) | Case Number |
| Form CR-6          Rev. 8/98 | | |

IN THE _____ **MUNICIPAL** _____ COURT OF _____ **MONTGOMERY** _____ , ALABAMA

(Circuit, District, or Municipal)                                    (Name of Municipality or County)

☐ STATE OF ALABAMA

☒ MUNICIPALITY OF MONTGOMERY v. _____ TIFFANY MICHELE RILEY  (000061248A) _____

Defendant (NWS Jacket Number)

Before me, the undersigned authority, personally appeared this day the undersigned complainant who, upon first being duly sworn, states on oath that he/she has probable cause for believing, and does believe that _____ TIFFANY MICHELE RILEY _____ ,

Defendant, whose name is otherwise unknown to the complainant, did, prior to the commencement of this action, on or about

09/15/2006 _____ (date of occurrence) commit the offense of  **GIVING FALSE IDENTITY TO A LAW ENFORCEMENT**

**OFFICER** _____ within the

☐ County of _____

☒ City/Town of _____ **MONTGOMERY** _____ or in the police jurisdiction thereof, in that he/she did: (State specific facts here.  Continue on a

separate sheet of paper if needed.)     give a false name or address, to wit: _____ GWENDOLYN MCQUIRTER 2/27/1972 _____

_____ , to a law enforcement officer, to wit:

CPL. T. D. JAMES #1170 _____ , in the course of the officer's official duties and with intent

to mislead the officer,

in violation of

☐ Section _____ , Alabama Code 1975.

☒ Municipal Ordinance Number _____ 125-79 _____ which embraces Section _____ 13A-9-18.1 _____ Alabama Code 1975,

previously adopted, effective and in force at the time the offense was committed.

☐ Other _____

Sworn to and Subscribed before me this

19TH _____ day of

SEPTEMBER _____ , 2006

_Amanda Guffey_

Judge/Magistrate/Warrant Clerk

Complainant  _CPL. T.D. James #1170_

320 NORTH RIPLEY, MONTGOMERY, AL  36104

Address

334-241-4700

Telephone Number

## WITNESSES

| Name | Address | Telephone Number |
|---|---|---|
| | | |
| | | |
| | | |
| | | |

Additional Witnesses on Reverse Side.

I HEREBY CERTIFY THAT THIS IS A TRUE AND
CORRECT COPY OF THE ORIGINAL DOCUMENT ON
FILE IN THE MONTGOMERY MUNICIPAL COURT.

PATRICK J. MURPHY
CLERK OF
MONTGOMERY MUNICIPAL COURT

DATE: 10-24-2007

| State of Alabama<br>Unified Judicial System | **WARRANT OF ARREST**<br>(Felonies, Misdemeanors, or Violations) | Warrant Number<br>2006M03609 |
| --- | --- | --- |
| Form CR-58 (front)         Rev. 8/98 | | Case Number |

IN THE _____**MUNICIPAL**_____ COURT OF _____**MONTGOMERY**_____ , ALABAMA
(Circuit, District, or Municipal)                    (Name of Municipality or County)

☐ STATE OF ALABAMA

☒ MUNICIPALITY OF MONTGOMERY v. _____**TIFFANY MICHELE RILEY   (000061248A)**_____
Defendant (NWS Jacket Number)

---

## TO ANY LAW ENFORCEMENT OFFICER WITHIN THE STATE OF ALABAMA:

☒ Probable cause has been found on a Complaint filed in the court against (name or description of person to be arrested)

TIFFANY MICHELE RILEY

charging the offense of   **GIVING FALSE IDENTITY TO A LAW ENFORCEMENT OFFICER**

_____ as described in the Complaint.

☐ An indictment has been returned by the grand jury of this county against (name or description of person to be arrested)

charging the offense of _____

_____ as described in the Complaint.

☒ **YOU ARE THEREFORE ORDERED** to arrest the person named or described above and bring that person before a judge or magistrate of this court to answer the charges against that person and have with you then and this Warrant of Arrest with your return thereon.

If a judge or magistrate of this court is unavailable, or if the arrest is made in another county, you shall then take the accused person before the nearest or most accessible judge or magistrate in the county of the arrest.

☒ You may release the accused person without taking the accused before a judge or magistrate:

☒ If the accused person enters into a bond in the amount of $  **1,000.00**  with sufficient sureties approved by an authorized officer or by depositing cash or negotiable bonds in the amount with the court clerk.
---OR---

☒ If the accused person posts an appearance bond in the amount of $  **1,000.00**

☐ On his or her personal recognizance.

Tuesday, September 19, 2006 03:22 PM
Date                                                              _____
Judge/Court Clerk/Magistrate/Warrant Clerk

I HEREBY CERTIFY THAT THIS IS A TRUE AND
CORRECT COPY OF THE ORIGINAL DOCUMENT ON
FILE IN THE MONTGOMERY MUNICIPAL COURT.

PATRICK J. MURPHY
CLERK OF
MONTGOMERY MUNICIPAL COURT.
DATE: 10-29-2007

| Form CR-58 (back)   Rev. 8/98 | WARRANT OF ARREST<br>(Felonies, Misdemeanors, or Violations) |
|---|---|

## CERTIFICATE OF EXECUTION

I, the undersigned law enforcement officer, certify that I executed the foregoing **WARRANT OF ARREST** by arresting the accused person

named (or described ) therein at __2015__ o'clock ☐ a.m. ☒ p.m.

on the __15TH__ day of __SEPTEMBER__ , 20 __06__

in __MONTGOMERY__ COUNTY, ALABAMA.

After arrest, the accused person was:

☐ Released as authorized at _____ o'clock ☐ a.m. ☐ p.m. _____ , 20 ____

☒ Taken before ☐ Judge ☒ Magistrate at __15TH__ o'clock ☐ a.m. ☒ p.m.

__SEPTEMBER__ , 20 __06__

| __9-15-06__ | __T. Young #1126 /CPL (MPD__ |
|---|---|
| Date | Signature/Title/Agency |

## IDENTIFICATION OF ACCUSED PERSON

| Name of Accused Person<br>TIFFANY MICHELE RILEY | | | | Telephone Number | | |
|---|---|---|---|---|---|---|
| Social Security Number<br>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 | Drivers License Number & State<br>7321061  AL | | Date of Birth<br>02/27/1972 | Age<br>26 | Race<br>B | Sex<br>F |
| Height<br>500 | Weight<br>150 | Hair<br>Black | Eyes<br>Brown | Complexion<br>MED | | |
| Address of Accused<br>846 CORBETT ST | | | City<br>MONTGOMERY | State<br>AL | Zip Code<br>36108 | |
| Name of Employer | | | | Telephone Number | | |
| Address of Employer | | | City | State | Zip Code | |

## WITNESSES

| Name | Address | Telephone Number |
|---|---|---|
| | | |
| | | |
| | | |

## ACKNOWLEDGEMENT BY ACCUSED PERSON

☐ I hereby acknowledge that at the time of my release from custody I was directed to appear in person before the court, as follows:

Place: ___320 NORTH RIPLEY STREET, MONTGOMERY, ALABAMA 36104-2722  (334) 241-2776___

Date: _____ , 20 _____

Time: _____ o'clock ☐ a.m. ☐ p.m., and as thereafter needed until discharged.

☐ I promise to appear as directed before the court, as follows:

Place: ___320 NORTH RIPLEY STREET, MONTGOMERY, ALABAMA 36104-2722  (334) 241-2776___

Date: _____ , 20 _____

Time: _____ o'clock ☐ a.m. ☐ p.m., and as thereafter needed until discharged.

| _____ | _____ |
|---|---|
| Date | Signature of Accused Person |

IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

GWENDOLYN P. MCQUIRTER,        )
et al.,                                           )
                                                    )
            Plaintiffs,                       )
                                                    )
v.                                                 )        Civil Action No.: 2:07-cv-00234-MEF-WC
                                                    )
CITY OF MONTGOMERY, et al.,  )
                                                    )
            Defendants.                     )

**PLAINTIFF GWENDOLYN MCQUIRTER'S RESPONSES TO PLAINTIFF'S
FIRST SET OF INTERROGATORIES AND REQUEST FOR
PRODUCTION OF DOCUMENTS**

Comes now the Plaintiff, Gwendolyn McQuirter, by and through her undersigned counsel,

and provides the following responses to Defendants' First Set of Interrogatories and Requests for

Production of Documents, as follows:

**Interrogatory 1.**    Please describe your relationship with Tiffany Riley, including how you
came to know each other, the frequency and nature of your contacts with her, and the current
state of your relationship.

**ANSWER:**    I met and became friends with Tiffany Riley in 2002, after meeting her at
a local community store on Mildred and Mobile Streets in Montgomery, Alabama. I saw Tiffany
on a regular and frequent basis from 2002 through September 2006, when I learned that she had
given my name to law enforcement after she was arrested for prostitution. I did not have contact
with her for about eight (8) months thereafter. I ran into Tiffany in the mall around May 2007,
and she apologized for what she did and we have talked on occasion since then, although, our
relationship has not returned to what it was prior to September 2006.

**Interrogatory 2.**    Please list every medical professional from whom you have received
treatment or diagnosis related to this case, including address, telephone number and dates of
treatment for each.

**ANSWER:**    Meadhaven Emotional Health Program, Southern Blvd., Montgomery, AL
(334) 286-3116; treated from 9/20/2006 to 9/25/2006; Montgomery Family Medicine Res.,
Narrow Lane Road, Montgomery, AL (334) 288-2100, treated 9/06 to present; Montgomery
Mental Health Authority, 101 Coliseum Blvd., (334) 279-7830; treated from 9/06 to present.
Baptist South, 2190 E.S. Blvd., Montgomery, AL 36116, (334-288-2100), treated from 9/06



1

through present date on several different occasions.

**Request for Production 1**.        Please attach all medical records, notes and bills you have received for treatment related to this case.

   **ANSWER:**    See Exhibit A.

**Interrogatory 3.**   Please list every mental health professional from whom you have received any treatment or diagnosis related to this case, including address, telephone number and dates of treatment for each.

   **ANSWER:**    See response to Interrogatory 2.

**Request for Production 2.**        Please attach all treatment records, notes and bills you have received for mental health care you have received which is related to this case.

   **ANSWER:**    see Exhibit A.

**Interrogatory 4.**   Please state every source of income for you or your husband in the last 2 years, to include retirement benefits and social security or disability benefits, and then state the total amount of any income you claim to have lost due to this case, and explain how each absence from work was related to this case.

   **ANSWER:**    Objection. This Interrogatory seeks information of a personal and confidential nature which is neither relevant or material to the pending claims nor reasonable calculated to lead to the discovery of admissible evidence. Subject to and without waiving said objections, Plaintiff states that she is not seeking lost wages as damages in this cause.

**Request for Production 3.**        Please attach copies of 2006, 2005, and 2004 federal and state tax returns, with attachments, for you and your spouse.

   **ANSWER:**    Objection. This Request seeks documentation of a personal and confidential nature which is neither relevant or material to the pending claims nor reasonable calculated to lead to the discovery of admissible evidence. Subject to and without waiving said objections, Plaintiff states that she is not seeking lost wages as damages in this cause.

**Request for Production 4.**        Please attach copies of the most recent 12 months pay statements or other proof of income, if applicable, for you and your spouse.

   **ANSWER:**    Objection. This Request seeks documentation of a personal and confidential nature which is neither relevant or material to the pending claims nor reasonable calculated to lead to the discovery of admissible evidence. Subject to and without waiving said objections, Plaintiff states that she is not seeking lost wages as damages in this cause.

**Request for Production 5.**     Please attach copies of any financial statements or credit applications completed by you or your spouse, or on either of your behalf, in the last 24 months.

**ANSWER:**     Objection. This Request seeks documentation of a personal and confidential nature which is neither relevant or material to the pending claims nor reasonable calculated to lead to the discovery of admissible evidence. Subject to and without waiving said objections, Plaintiff states that she is not seeking lost wages as damages in this cause.

**Request for Production 6.**     Please attach copies of any documents you or your spouse has prepared with regard to filing for bankruptcy within the last 7 years, regardless of whether said documents were filed.

**ANSWER:**     Objection. This Request seeks documentation of a personal and confidential nature which is neither relevant or material to the pending claims nor reasonable calculated to lead to the discovery of admissible evidence. Subject to and without waiving said objections, Plaintiff states that she is not seeking lost wages as damages in this cause.

**Interrogatory 5.**   Please describe, in detail, how you claim this case has affected your relationship with your spouse.

**ANSWER:**     Because of the anxiety and stress of what has happened, my husband and I have separated.  The emotional devastation of what has happened to me has affected our relationship in all aspects, including our communication, activities, intimacy, and just about every other way imaginable.

**Request for Production 7.**     Please attach copies of all documentation of any affects described above, to include medical records, counseling (pastoral or clinical) notes, etc.

**ANSWER:**     See Exhibit A.

**Interrogatory 6.**   Please list all prescriptions you have been given in relation to this case, explain what condition each medication has been prescribed to treat, and state the name and address of each pharmacy at which you filled a prescription.

**ANSWER:**     See Exhibit B.

**Request for Production 8.**     Please attach copies of all prescriptions and receipts for medications purchased in relation to this case.

**ANSWER:**     See Exhibit B.

**Interrogatory 7.**   Please list all persons who may have information or knowledge relevant to this case, and for each state a full name, telephone number and address, and state what information they may have regarding the case.

   **ANSWER:**   See (A) to Plaintiffs' Disclosure of Information dated May 29, 2007; see 1.(A) to Defendant's Rule 26(a)(1) Initial Disclosures dated May 29, 2007, see Defendant's response to Interrogatory 2(a) of Plaintiffs' First Set of Interrogatories.

**Request for Production 9.**   Please attach copies of all documents or other evidence regarding your reputation before you photo was released.

   **ANSWER:**   None.

**Request for Production 10.**   Please attach copies of all evidence you intend to use at trial.

   **ANSWER:**   Documents previously exchanged as part of discovery in this cause which are already in Defendants' possession.


Date:  July 20, 2007

_Gwendolyn P. McQuirter_
Gwendolyn P. McQuirter
Plaintiff



Jerry M. Blevins (BLE003)
Attorney for Plaintiffs
Hillwood Office Center
2800 Zelda Road, Suite 200-3
Montgomery, Alabama 36106
(334) 262-7600 (Voice)
(334) 262-7644 (Fax)
E-Mail: ATTYJMBev@aol.com

4

STATE OF ALABAMA          )
                          )
MONTGOMERY COUNTY         )


   Before me, a notary public in and for said state and county, personally appeared
**GWENDOLYN P. MCQUIRTER**, who has been properly identified, and states on oath that the
information stated above is true and correct to the best of her knowledge subject to the law for
perjury and the penalties thereof.

   Sworn to and subscribed before me this the 20th day of July, 2007.

_____
Notary Public
State of Alabama At Large
Commission Expires: ___3/13/2010___


CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of the foregoing upon:

          Kimberly O. Fehl, Esq.
          Legal Department
          City of Montgomery
          P.O. Box 1111
          Montgomery, Alabama 36101-1111

   by electronic transmission and/or by depositing a copy of the same in the U.S. Mail, postage
prepaid, this the 20th day of July, 2007.

_____
Jerry M. Blevins

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

GWENDOLYN P. MCQUIRTER, and )
CHARLES E. MCQUIRTER, )
   Plaintiffs, )
    )
    )
v. )
    )
CITY OF MONTGOMERY, )
K.C. BENTLEY, and RON COOK, )
   Defendants and Third-Party Plaintiffs, )
    )
v. )  Case No. **2:07-cv-234-MEF-WC**
    )
TIFFANY MICHELE RILEY, and )
ROOSEVELT PERKINS, )
   Third-Party Defendants. )

## AFFIDAVIT OF ALLISON H. HIGHLEY

STATE OF ALABAMA )
COUNTY OF MONTGOMERY )

     Before me, a Notary Public in and for said State and County, personally appeared

Allison H. Highley and, after first being duly sworn by me, did depose and state to me:

     My name is Allison H. Highley. I am over nineteen years of age, have first-hand

knowledge of the facts contained herein and am competent to testify thereto.

     I am currently employed as an Associate City Attorney in the Legal Department

of the City of Montgomery. I work with Attorney Kim O. Fehl, the attorney of record for

Defendants City of Montgomery and Officers Bentley and Cook.

     On September 7, 2007, Ms. Fehl was out of the office when Roosevelt Perkins

called the City of Montgomery Legal Department to talk about the Complaint he had

received. I had been assisting Ms. Fehl on this case, so the call was forwarded to me.

     After introducing myself, I asked Mr. Perkins if he had hired a lawyer and

explained that I could only speak to his attorney if he was represented by counsel. Mr.

1

DEFENDANT'S
EXHIBIT
"8"

Perkins indicated that he had not spoken to a lawyer about the case.

Mr. Perkins stated to me that he had received the Third Party Complaint and that he wanted to resolve the matter short of litigation. I then asked him what he meant by that, and Mr. Perkins said he would do "whatever it takes to make this thing go away." He went on to say that he was wrong to bond Tiffany Riley out under a false name, but that he just was not thinking. Mr. Perkins said he made a mistake and wanted to admit his wrongdoing and do what it takes to settle this matter.

In response, I told Mr. Perkins that I would convey what he was saying to Ms. Fehl, the attorney handling the case, but that there probably was not a lot the City could do to help him out. I told Mr. Perkins that he would have to comply with the Summons and suggested he consult with an attorney. I also suggested that he might ask the clerk for help filing his Answer to the Complaint.

Mr. Perkins gave me a telephone number where I could reach him. I called and left a message at that number early the next week, but my call was not returned. I have not had any further contact with Mr. Perkins since that time.

I have read the foregoing affidavit consisting in total of two pages and state that it is true and correct to my present knowledge and information.

Further affiant saith not.

_____
Allison H. Righley
Associate City Attorney / Affiant

SWORN to and SUBSCRIBED before me this the 30th day of October, 2007.

_____
Notary Public
My commission expires:     NOTARY PUBLIC STATE OF ALABAMA AT LARGE
                           MY COMMISSION EXPIRES: Mar 28, 2011
                           BONDED THRU NOTARY PUBLIC UNDERWRITERS

2