IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| GWENDOLYN P. MCQUIRTER & <br> CHARLES E. MCQUIRTER, <br><br> PLAINTIFFS, <br><br> v. <br><br> CITY OF MONTGOMERY, ALABAMA, <br> a Municipal Corporation, K.C. BENTLEY, <br> & RON COOK, <br><br> DEFENDANTS. | ) <br> ) <br> ) <br> ) <br> ) <br> ) CASE NO. 2:07-cv-234-MEF <br> ) <br> ) <br> ) (WO - Do Not Publish) <br> ) <br> ) <br> ) |

## **MEMORANDUM OPINION AND ORDER**

Gwendolyn McQuirter ("McQuirter"), a woman whose name and driver's license photography was used in a press release issued by the police department regarding arrests made in a prostitution sting, and her husband bring this action against the City of Montgomery, Alabama and two of its police officers for an alleged violation of the Driver's Privacy Protection Act. In addition to seeking a statutory remedy under the DPPA, McQuirter also brings a claim pursuant to 42 U.S.C. § 1983 for damages for the violation of the DPPA. Additionally, McQuirter and her husband bring a variety of claims pursuant to Alabama law.[1]

Both McQuirter and Defendants have moved for summary judgment on McQuirter's federal claims. For the reasons set forth in this Memorandum Opinion and Order, the Court

---

[1] Also pending before this Court are the third party claims brought by Defendants against Tiffany Riley and Roosevelt Perkins pursuant to Alabama law.

finds that Defendants are entitled to judgment as a matter of law on all of McQuirter's federal claims. The Court declines to exercise supplemental jurisdiction over the claims brought pursuant to Alabama law and these claims will be dismissed without prejudice.

## JURISDICTION AND VENUE

This Court has subject matter jurisdiction over the claims in this action pursuant to 28 U.S.C. §§ 1331, 1343, and 1367. No challenge is made to the personal jurisdiction over the parties or the appropriateness of venue; both of which are supported by the facts of this case.

## STANDARD OF REVIEW

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323. The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing the non-moving party has failed to present evidence in support of some element of its case on which

it bears the ultimate burden of proof. *Id.* at 322-23.

Once the moving party has met its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324. To avoid summary judgment, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). On the other hand, a court ruling on a motion for summary judgment must believe the evidence of the non-movant and must draw all justifiable inferences from the evidence in the non-moving party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). After the nonmoving party has responded to the motion for summary judgment, the court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c).

## PROCEDURAL HISTORY

On February 13, 2007, McQuirter and her husband filed this lawsuit in the Circuit Court for Montgomery County, Alabama. On March 15, 2007, Defendants removed the action to this Court invoking its subject matter jurisdiction over certain of the claims pursuant to 28 U.S.C. §§ 1331 and 1343.[2]

---

[2] Although not specifically mentioned in the Notice of Removal, this Court has supplemental jurisdiction over the majority of the claims in this action pursuant to 28 U.S.C. § 1367. Plaintiffs' Second Amended Complaint invokes that statute. *See* Doc. # 11.

The claims currently brought in this lawsuit are set forth in Plaintiffs' Second Amended Complaint (Doc. # 11). Specifically, McQuirter and her husband bring claims against the City of Montgomery and two employees of the Montgomery Police Department ("MPD"): K.C. Bentley ("Bentley") and Ron Cook ("Cook"). Count I sets forth McQuirter's claim against Cook and Bentley for negligence under Alabama tort law. Count II sets forth McQuirter's claim against Cook and Bentley for "intentional infliction of emotional distress" under Alabama law. Count III sets forth McQuirter's claim against Cook and Bentley for libel per se under Alabama law. Count IV sets forth McQuirter's claim against Cook and Bentley for slander per se under Alabama law. Count V sets forth McQuirter's claim against Cook and Bentley for invasion of privacy under Alabama law. Count VI sets forth McQuirter's husband's claim against Cook and Bentley for loss of consortium under Alabama law. Count VII sets forth McQuirter's claim against Cook and Bentley pursuant to the Driver's Privacy Protection Act ("DPPA"), 18 U.S.C. §§ 2721-2725. Count VIII sets forth McQuirter's claim against Cook and Bentley pursuant to 42 U.S.C. § 1983 for alleged violations of McQuirter's rights under the DPPA. Based on these claims McQuirter and her husband demand punitive damages, compensatory damages, costs, and attorney's fees from Cook, Bentley, and the City of Montgomery.[3]

---

[3] In this Court's view, the Second Amended Complaint contains little in the way of an explanation of the factual predicate for the federal claims against the City of Montgomery. It is only alleged that Cook and Bentley were employed by the MPD and acting within the line and scope of their employment with the MPD. There are no allegations in the Second Amended Complaint that identify any official policy or custom of the City of Montgomery

Defendants to this action have brought certain claims against two third party defendants for fraud. The Court has jurisdiction over these claims pursuant to 28 U.S.C. § 1367. Neither third party defendant has elected to defend against the third party claims. Consequently, the Defendants have had the Clerk of the Court enter default against the third party defendants and have a motion pending for default judgment.

Also pending before the Court are cross motions for summary judgment on the claims of McQuirter and her husband against Defendants. McQuirter seeks a partial summary judgment as to liability against Bentley and Cook on Counts VII and VIII, the sole federal claims in this action.[4] The City of Montgomery, Bentley and Cook seek summary judgment on all of the claims against them.[5]

**FACTS**

When considering a motion for summary judgment, the Court carefully considers all deposition excerpts, discovery responses, and properly authenticated documents submitted in support of and in opposition to the motion. In viewing the submissions of the parties, the Court must consider the evidence in the light most favorable to the non-moving party.

---

as having caused the violations of the DPPA which form the predicate for all federal claims in this action.

[4] *See* Plaintiff Gwendolyn McQuirter's Motion for Partial Summary Judgment as to Liability Against Defendants K.C. Bentley and Rob Cook on Counts VII (Violation of Driver[sic] Privacy Protection Act), & VIII (42 U.S.C. § 1983) (Doc. # 31).

[5] *See* The Motion for Summary Judgment of Defendants, City of Montgomery, K.C. Bentley and Ron Cook (Doc. # 33).

Because there are cross-motions for summary judgment in this case, the Court will have to consider the facts and reasonable inferences to be drawn from the facts in the light most favorable to the non-moving party as the Court considers each of the motions.

On or about September 15, 2006, the Special Operations Division of the MPD conducted a prostitution sting in the area of the Mobile Highway in Montgomery, Alabama. During the sting, male undercover police officers picked up female prostitutes and took them into custody. As a result of the sting, MPD police officers arrested ten women for prostitution for allegedly offering sex for money. One of the ten women arrested was Tiffany Riley ("Riley").

MPD policy requires the completion of certain paperwork for each arrest made by MPD officers. Photographs of each person arrested must accompany the paperwork. Bentley, an officer with the MPD, was assigned to the processing team responsible for booking the ten women arrested on September 15, 2006 and preparing the necessary paperwork documenting the arrest.

Bentley processed the information on Riley. When Bentley asked her name, Riley lied and told Bentley her name was Gwendolyn McQuirter. When Bentley asked Riley for her address and date of birth, Riley provided Gwendolyn McQuirter's address and date of birth.[6] When Bentley asked Riley for her social security number, Riley did not provide one.

---

[6] Riley has been friends with McQuirter for several years and may have occasionally lived at McQuirter's home. Consequently, she knew McQuirter's address and date of birth.

As previously stated, Bentley was required to attach a copy of a photograph of each person arrested to the paperwork she submitted to her supervisors. Sometimes prior booking photographs from earlier arrests are used for this purpose, but there was no such photograph available of McQuirter. Instead of making a new photograph, Bentley accessed the Law Enforcement Tactical System ("LETS")[7] to obtain a photograph of Gwendolyn McQuirter. LETS permits law enforcement to access information contained on an individual's driver's license records, including the driver's license photograph.

Lieutenant Crockett, the lieutenant supervising Bentley received the photographs and paperwork from Bentley, including McQuirter's driver's license photograph. Lieutenant Crockett put copies of the photographs along with the daily activity report on the desk of the Major and the Captain. Lieutenant Crockett then contacted Cook, the on-call Public Information Officer for the MPD and told him they had had a prostitution sting which resulted in several arrests. Lieutenant Crockett told Cook where he could find copies of the photographs of the women arrested in the prostitution sting.

Cook immediately retrieved the photographs and took them to the MPD headquarters. Cook prepared a press release on September 16, 2006 that stated in pertinent part that:

> On Friday September 15, 2006, the Special Operations Division conducted a prostitution sting in the area of Mobile highway [sic] and the West South Blvd.

---

[7] LETS is a database provided by the Alabama Criminal Justice Information Center. The information in the LETS database is obtained from many different agency records such as records from the Bureau of Vital Statistics, the Administrative Office of the Courts, the Department of Public Safety, and the Department of Revenue.

7

>As a result of this operation, ten prostitutes were taken into custody. Attached is a photograph of each suspect.

Cook distributed the press release and the photographs to the following media outlets: Montgomery Advertiser, Associated Press, WSFA-TV-12, Alabama Public Television, Tuskegee Times, Kevin Elkins of 1440 WLWI AM, WNCF-ABC-32, WLWI 92.3, and WAKA-TV-8. Several of these media outlets aired or published stories on the arrests. Some of the news coverage included display of the photographs, including McQuirter's driver's license photograph.

The MPD's Public Information Officer prepares news releases at the discretion of the chief of police. Primarily, the MPD releases information when it feels an incident is of significant public interest, if it is seeking to expose a public safety issue via the media, or if it is actively seeking a criminal suspect. The MPD sends out press releases to the media on high profile arrests or crimes and large scale special operations such as large scale drug arrests, prostitution stings, and neighborhood take down operations. In some instances, MPD releases photographs to the media along with news releases or police bulletins.[8] Photographs used in these releases are sometimes taken from driver's license records. For example, this might be done if the individual sought in a police bulletin had never been arrested and photographed before.

---

[8] It appears that police bulletins encompass "be on the lookout" police bulletins advising the public of the risks associated with a suspect at large.

**DISCUSSION**

Plaintiffs allege that Bentley obtained her driver's license photograph and other information from McQuirter's motor vehicle record and that Cook released the photograph to the media and the general public in violation of the Driver's Privacy Protection Act ("DPPA"), 18 U.S.C. §§ 2721-2725. Plaintiffs also seek damages for the alleged violation of the DPPA under 42 U.S.C. § 1983.[9] Urging one reading of the DPPA which they contend entitles them to judgment as a matter of law, Plaintiffs seek a partial summary judgment on these claims. Urging another interpretation of the DPPA, Defendants seek judgment as a matter of law because they contend that the undisputed material facts do not support a finding of any violation of the DPPA by Bentley or Cook. Given that the relevant and material facts as to these claims are not in dispute, the resolution of these motions depends on this Court's interpretation of the language of the DPPA.

The DPPA "regulates the disclosure of personal information contained in the records of state motor vehicle departments." *Reno v. Condon*, 528 U.S. 141, 143 (2000). State motor vehicle departments require drivers and automobile owners to provide information and photographs as a condition of obtaining driver's licenses or automobile registrations. *Id.* Largely in response to mounting public safety concerns over stalkers' and other criminals'

---

[9] In *Collier v. Dickinson*, 477 F.3d 1306 (11th Cir. 2007), a panel of the Eleventh Circuit Court of Appeals held that the statutory right to privacy created by the DPPA was enforceable separately under 42 U.S.C. § 1983.

access to the personal information maintained in state DMV records,[10] Congress enacted the DPPA to regulate the disclosure of such information. *See* 139 Cong. Rec. H1785-01 (1992); 139 Cong. Rec. E2742-02 (1993).

The DPPA restricts the States' ability to disclose a driver's personal information without the driver's consent. *Reno*, 528 U.S. at 144. The DPPA provides, in relevant part:

> a State department of motor vehicles, and any officer, employee, or contractor thereof, shall not knowingly disclose or otherwise make available to any person or entity:
>
> (1) personal information, as defined in 18 U.S.C. 2725(3), about any individual obtained by the department in connection with a motor vehicle record, except as provided in subsection (b) of this section; or
>
> (2) highly restricted personal information, as defined in 18 U.S.C. 2725(4), about any individual obtained by the department in connection with a motor vehicle record, without the express consent of the person to whom such information applies, except uses permitted in subsections (b)(1), (b)(4), (b)(6), and (b)(9)....

18 U.S.C. § 2721(a). Under this statute, personal information means

> information that identifies an individual, including an individual's photograph, social security number, driver identification number, name, address (but not the 5-digit zip code), telephone number, and medical or disability information, but does not include information on vehicular accidents, driving violations, and driver's status.

18 U.S.C. § 2725(3). As used in this statute, "highly restricted personal information" means

---

[10] *See also Margan v. Niles*, 250 F. Supp. 2d 63, 68-69 (N.D.N.Y. 2003) for a discussion of the intended purpose of the DPPA which is based on numerous citations to the congressional record.

"an individual's photograph or image, social security number, medical or disability information." 18 U.S.C. § 2725(4).

As is obvious from the text of § 2721(a), "[t]he DPPA's prohibition of nonconsensual disclosures is also subject to a number of statutory exceptions." *Reno*, 528 U.S. at 145. As the United States' Supreme Court has explained, the DPPA's provisions allow "private persons who have obtained drivers' personal information for one of the aforementioned permissible purposes to further disclose that information for any one of those purposes." *Id.* at 146. Importantly, the DPPA was not intended to restrict or hinder law enforcement and crime prevention strategies even if those strategies might include releasing personal information to the general public. *See, e.g., Parus v. Kroeplin*, 402 F. Supp. 2d 999, 1006 (W.D. Wisc. 2005) (*quoting* 139 Cong. Rec. S15962 (Nov. 17, 1993)).

At issue in this case is whether 18 U.S.C. § 2721(b)(1), one of the statutory exceptions to the prohibition on nonconsensual disclosures, covers: 1) Bentley's action in obtaining McQuirter's photograph or other information from the State of Alabama's driver's license records or 2) Cook's disclosure of McQuirter's photograph to various media outlets with the press release. 18 U.S.C. § 2721(b)(1) provides that protected information may be disclosed as follows: "[f]or use by any government agency, including any court or law enforcement agency, in carrying out its functions, or any private person or entity acting on behalf of a Federal, State, or local agency in carrying out its functions."

Plaintiffs' claims under the DPPA and pursuant to § 1983 for alleged violations of the

11

DPPA arising out of Bentley's accessing of McQuirter's driver's license records fail because Bentley's actions are within the exception set forth in 18 U.S.C. § 2721(b)(1). It is undisputed that Bentley accessed the LETS system from which she obtained information and a photograph from McQuirter's driver's license record while acting as an authorized law enforcement user of that system in order to complete booking paperwork requirements of her employer, the MPD, a law enforcement agency. "A law enforcement agency may use protected personal information so long as the agency is 'carrying out' a 'law enforcement function.'" *Parus*, 402 F. Supp. at 1006 (no violation of DPPA as a matter of law where police dispatcher gave motor vehicle information to another law enforcement agent who had requested it). *Accord, Mechler v. Hodges*, No. C-1-02-948, 2005 WL 1406102 at *7 (S.D. Ohio June 15, 2005) (no violation of DPPA found where use and disclosure of social security number was in conjunction with duties of law enforcement agency and its attempt to verify identity of a suspect). Similarly, this Court cannot find that Bentley's actions in this case in any way constituted a violation of the DPPA because her actions were carrying out a law enforcement function. Bentley accessed the information in order to complete the processing of an arrest and to properly report it to her superior officers as her job required her to do with all arrests she processed. Creating and maintaining criminal records and communicating with supervisory personnel regarding arrests made during a shift easily constitute carrying out a law enforcement function.

Plaintiffs' claims under the DPPA and pursuant to § 1983 for alleged violations of the

DPPA arising out of Cook's release of McQuirter's driver's license photograph also fail because Cook's actions are within the exception set forth in 18 U.S.C. § 2721(b)(1). It is undisputed that acting as the Public Information Officer for the MPD, Cook released McQuirter's driver's license photograph to various media outlets along with a press release announcing the results of a large prostitution sting operation. It is undisputed that the MPD releases information when it feels an incident is of significant public interest, when it is seeking to expose a public safety issue via the media, or when it is actively seeking a criminal suspect. When it does so, it is using private persons or entities, namely various media outlets, in carrying out its law enforcement functions. Such releases can apprize the public of risks created by dangerous suspects at large, can bolster public confidence in law enforcement activities, can advise the public of information needed to increase public safety, and can act as both a general and a specific deterrent to criminal activity. Given that these law enforcement functions are served by the use of the media to disseminate such information to the public, the Court finds that Cook's actions come within the limits of permissible law enforcement conduct under 18 U.S.C. § 2721(b)(1), which allows redisclosure for use by private persons or entities acting on behalf of federal state or local agencies in carrying out agency functions.

The reading of the statute in the manner Plaintiffs urge would prohibit law enforcement agencies from ever releasing information or photographs from driver's license records to anyone other than a court or another law enforcement agency. This argument not

13

only misreads the clear language of § 2721(b)(1), but it also is inconsistent with the intent and purpose of the statutes. Moreover, such an approach would impede legitimate law enforcement activities. For example, law enforcement agencies would be prohibited from adequately warning the public about dangerous suspects at large. Additionally, law enforcement agencies would be prevented from soliciting the assistance of the public in locating suspects or missing persons.

As a matter of law, Defendants have established that they are entitled to judgment on all of Plaintiffs' claims pursuant to federal law (Counts VII and VIII) because all of the conduct Plaintiffs challenge falls with the ambit of the § 2721(b)(1) exception to the prohibitions of the DPPA. All claims pursuant to Counts VII and VIII are predicated on alleged violations of the DPPA. The Court has found that the DPPA was not violated. Consequently, the Court need not address the question of whether both McQuirter and her husband have claims for violations of the DPPA or whether the City of Montgomery can be liable under either the DPPA or § 1983 for the actions of Cook and Bentley.

Because this Court has concluded that summary judgment is due to be granted as to all of the federal claims asserted in this case, the Court declines to exercise supplemental jurisdiction over all state law claims and those claims will be remanded to state court. *See* 28 U.S.C. § 1367(c)(3); *Graham v. State Farm Mut. Ins. Co.*, 193 F.3d 1274, 1282 (11th Cir.1999) ("If no federal claim survives summary judgment, the court sees no reason why the other claims should not be dismissed or remanded pursuant to 28

U.S.C. § 1367(c)(3).").

## CONCLUSION

For the foregoing reasons, it is hereby ORDERED as follows:

1. Plaintiff Gwendolyn McQuirter's Motion for Partial Summary Judgment as to Liability Against Defendants K.C. Bentley and Rob Cook on Counts VII (Violation of Driver[sic] Privacy Protection Act), & VIII (42 U.S.C. § 1983) (Doc. # 31) is DENIED.

2. The Motion for Summary Judgment of Defendants, City of Montgomery, K.C. Bentley and Ron Cook (Doc. # 33) is GRANTED only with respect to all claims pursuant to the Driver's Privacy Protection Act (Count VII) and 42 U.S.C. § 1983 (Count VIII).

3. The claims set forth in Count VII and Count VIII of the Second Amended Complaint are DISMISSED WITH PREJUDICE.

4. The Court declines to exercise supplemental jurisdiction over all claims pursuant to state law (Counts I through VI and the Third Party Claims) and such claims are due to be REMANDED to the Circuit Court for Montgomery County Alabama. The Clerk of the Court is DIRECTED to take all steps necessary to effect this remand.

5. Any pending motions not addressed by this Memorandum Opinion and Order, namely: the portions of the Motion for Summary Judgment of Defendants City of Montgomery, K.C. Bentley and Ron Cook (Doc. # 33) directed to the claims pursuant to Alabama law (Counts I through VI) and the Third Party Plaintiffs[sic] Motion for Default Judgment Against Third Party Defendants, Tiffany Michele Riley and Roosevelt Perkins

(Doc. # 37), are left for resolution by the Circuit Court for Montgomery County, Alabama after remand.

 6. Due to these rulings, the trial setting in this case is hereby STRICKEN.

 7. A separate final judgment will be entered.

DONE this the 12th day of February, 2008.

            /s/ Mark E. Fuller
            CHIEF UNITED STATES DISTRICT JUDGE

A copy of this checklist is available at the website for the USCA, 11th Circuit at www.ca11.uscourts.gov
Effective on April 9, 2006, the new fee to file an appeal will increase from $255.00 to $455.00.

## CIVIL APPEALS JURISDICTION CHECKLIST

**1.** **Appealable Orders:** Courts of Appeals have jurisdiction conferred and strictly limited by statute:

  (a) **Appeals from final orders pursuant to 28 U.S.C. § 1291:** Only final orders and judgments of district courts, or final orders of bankruptcy courts which have been appealed to and fully resolved by a district court under 28 U.S.C.§ 158, generally are appealable. A final decision is one that "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." Pitney Bowes, Inc. v. Mestre, 701 F.2d 1 365, 1 368 ( 11th Ci r. 1 983). A magistrate judge's report and recommendation is not final and appealable until judgment thereon is entered by a district court judge. 28 U.S.C. § 636(c).

  (b) **In cases involving multiple parties or multiple claims,** a judgment as to fewer than all parties or all claims is not a final, appealable decision unless the district court has certified the judgment for immediate review under Fed.R.Civ.P. 54(b). Williams v. Bishop, 732 F.2d 885, 885- 86 (11th Cir. 1984). A judg ment which resolves all issues except matters, such as attorneys' fees and costs, that are collateral to the merits, is immediately appealable. Budinich v. Becton Dickinson & Co., 486 U.S.196, 201, 108 S.Ct. 1717, 1721-22, 100 L .Ed.2d 178 (1988); LaChance v. Duffy's Draft House, Inc., 146 F.3d 832, 837 (11th Cir. 1998).

  (c) **Appeals pursuant to 28 U.S.C. § 1292(a):** Appeals are permitted from orders "granting, continuing, modifying, refusing or dissolving injunctions or refusing to dissolve or modify injunctions . . ." and from "[i]nterlocutory decrees . . . determining the rights and liabilities of parties to admiralty cases in which appeals from final decrees are allowed." Interlocutory appeals from orders denying temporary restraining orders are not permitted.

  (d) **Appeals pursuant to 28 U.S.C. § 1292(b) and Fed.R.App.P. 5**: The certification specified in 28 U.S.C. § 1292(b) must be obtained before a petition for permission to appeal is filed in the Court of Appeals. The district court's denial of a motion for certification is not itself appealable.

  (e) **Appeals pursuant to judicially created exceptions to the finality rule:** Limited exceptions are discussed in cases including, but not limited to: Cohen v. Beneficial Indus. Loan Corp., 337 U.S. 541, 546, 69S.Ct. 1221, 1225-26, 93 L.Ed. 1528 (1949); Atlantic Fed. Sav. & Loan Ass'n v. Blythe Eastman Paine Webber, Inc., 890 F.2d 371, 376 (11th Cir. 1989); Gillespie v. United States Steel Corp., 379 U.S. 148, 157, 85 S.Ct. 308, 312, 13 L.Ed.2d 199 (1964).

Rev.: 4/04

2. **Time for Filing**: The timely filing of a notice of appeal is mandatory and jurisdictional. Rinaldo v. Corbett, 256 F.3d 1276, 1278 (11th Cir. 2001). In civil cases, Fed.R.App.P. 4(a) and (c) set the following time limits:

   (a) **Fed.R.App.P. 4(a)(1):** A notice of appeal in compliance with the requirements set forth in Fed.R.App.P. 3 must be filed in the district court within 30 days after the entry of the order or judgment appealed from. However, if the United States or an officer or agency thereof is a party, the notice of appeal must be filed in the district court within 60 days after such entry. **THE NOTICE MUST BE RECEIVED AND FILED IN THE DISTRICT COURT NO LATER THAN THE LAST DAY OF THE APPEAL PERIOD – no additional days are provided for mailing.** Special filing provisions for inmates are discussed below.

   (b) **Fed.R.App.P. 4(a)(3):** "If one party timely files a notice of appeal, any other party may file a notice of appeal within 14 days after the date when the first notice was filed, or within the time otherwise prescribed by this Rule 4(a), whichever period ends later."

   (c) **Fed.R.App.P. 4(a)(4):** If any party makes a timely motion in the district court under the Federal Rules of Civil Procedure of a type specified in this rule, the time for appeal for all parties runs from the date of entry of the order disposing of the last such timely filed motion.

   (d) **Fed.R.App.P. 4(a)(5) and 4(a)(6):** Under certain limited circumstances, the district court may extend the time to file a notice of appeal. Under Rule 4(a)(5), the time may be extended if a motion for an extension is filed within 30 days after expiration of the time otherwise provided to file a notice of appeal, upon a showing of excusable neglect or good cause. Under Rule 4(a)(6), the time may be extended if the district court finds upon motion that a party did not timely receive notice of the entry of the judgment or order, and that no party would be prejudiced by an extension.

   (e) **Fed.R.App.P. 4(c):** If an inmate confined to an institution files a notice of appeal in either a civil case or a criminal case, the notice of appeal is timely if it is deposited in the institution's internal mail system on or before the last day for filing. Timely filing may be shown by a declaration in compliance with 28 U.S.C. § 1746 or a notarized statement, either of which must set forth the date of deposit and state that first-class postage has been prepaid.

3. **Format of the notice of appeal:** Form 1, Appendix of Forms to the Federal Rules of Appellate Procedure, is a suitable format. See also Fed.R.App.P. 3(c). A pro se notice of appeal must be signed by the appellant.

4. **Effect of a notice of appeal:** A district court loses jurisdiction (authority) to act after the filing of a timely notice of appeal, except for actions in aid of appellate jurisdiction or to rule on a timely motion of the type specified in Fed.R.App.P. 4(a)(4).